Merrionette Manor Homes Improvement Association, Petitioner, v. Burton A. Heda, and Edythe A. Heda, Respondents.

**Gen. No. 46,823.**

First District, Second Division.

June 26, 1956.

Released for publication September 11, 1956.

Leffmann & Lewy, of Chicago, for appellant.

No brief filed for appellee.

JUDGE SCHWARTZ delivered the opinion of the court.

The question before this court is whether or not the plaintiff, an association of home owners organized as a nonprofit corporation, whose membership consists of the owners of real property within an area subjected to planned and uniform restrictive covenants, has sufficient interest to bring suit to enjoin alleged violations. The association has no legal title to any property in the area, but the prospect of the formation of such an association for the purpose of requiring conformance was set forth in the declaration establishing the restrictive covenants. On motion of defendants the trial court dismissed the suit, and plaintiff appealed. Defendants filed no brief in this court and we must therefore decide the case on the brief of appellant and our own research.

The original subdivider of the property was the Merrionette Manor Corporation which on December 29, 1948, recorded its declaration of covenants designed to preserve the plan of the subdivision, the character of the homes and the arrangement for land usage. The covenant involved in the instant case reads as follows:

"A vestibule, no more than one story in height, may be erected by any owner of any residential unit which shall not extend beyond the confines of the present front stoop, and may only be erected when the owner of the attached adjacent dwelling unit shall simul-

187

taneously erect a similar vestibule of the same design and construction to conform to the entire residential unit."

Other covenants prohibited the construction of trailers, tents, shacks, barns, noxious or offensive trades or activities, signs, advertisements, billboards, and other uses considered objectionable. It was further stated that in the event of the formation of a property owners association whose purpose "shall specifically include the control of all properties in the area with respect to conformance," the declarant could at its option assign the control therein set up to the property owners association.

Following this declaration of covenants, the declarant caused to be incorporated the Merrionette Manor Homes Improvement Association, plaintiff in this case, including in the purposes of the corporation the encouraging of enforcement, preservation and maintenance of protective covenants; safeguarding the owners of residences against improper use of surrounding building sites and generally to promote and encourage pride of ownership and harmonious maintenance of properties among the various owners resident in the subdivision. The plaintiff association is the assignee of the declarant as to the right to bring an action to enforce the covenants.

Defendants purchased the property in question, which was half of a duplex house, in June 1952. The deed to the property provided that title was taken subject to the restrictive covenants referred to. Despite the covenants and the warning that such action would result in plaintiff's seeking legal and equitable relief, defendants constructed a vestibule without the joint and simultaneous construction of a like vestibule by the owner of the adjacent dwelling unit and without having plans therefor approved by the declarant or the plaintiff or any agent of the declarant or the plaintiff. Thereupon this suit was instituted.

The question is one of first impression in Illinois. Home owners associations such as the plaintiff appear to be a relatively modern device, a natural outgrowth of the development of housing projects on a large scale, particularly in urban communities where the general good of all within the community requires adherence to some common standards. Everybody's business is no one's business. Hence, the enforcement of such standards had to be centralized and home owners associations came into being. While the general question of who may enforce restrictive covenants has been discussed in many cases, the particular question here presented has been considered in but one case, that of Neponsit Property Owners' Ass'n v. Emigrant Industrial Sav. Bank, 278 N. Y. 248, 15 N.E.2d 793. The case is squarely in point. There, as in the instant case, the plaintiff had not succeeded to the ownership of any property in the area nor did the plaintiff own any other property in the residential tract to which any easement or right of enjoyment was appurtenant. The plaintiff association was created solely to act as the assignee of the benefit of the covenant. The court considered the argument that such covenants cannot be enforced when there is no privity of estate between the parties, and pointed out that the enforcement of such covenants rests upon equitable principles, citing Tulk v. Moxhay, 2 Phillips 774; Trustees of Columbia College v. Lynch, 70 N. Y. 440, 26 Am. Rep. 615; Korn v. Campbell, 192 N. Y. 490, 85 N. E. 687, 37 L. R. A. (N. S.) 1, 127 Am. St. Rep. 925. The court said that no right to enforce a restrictive covenant where the plaintiff did not own property which would benefit by such enforcement had been sustained in New York, but as illustrating that this is not true in some jurisdictions, cited Van Sant v. Rose, 260 Ill. 401, 103 N. E. 194, which we will later discuss. The court concluded that it is not necessary to lay down any definite rule as to

189

"when, or even whether, covenants in a deed will be enforced, upon equitable principles, against subsequent purchasers with notice, at the suit of a party without privity of contract or estate." The court there considered that the solution was to look at the real character of the association, not to ignore the corporate form nor to draw aside the veil, but to recognize that the association was acting as the agent or representative of the property owners, and that the property owners were expected to and did look to that organization as the medium through which enjoyment of their common rights might be preserved equally for all. The court concluded its opinion with the following:

"Only blind adherence to an ancient formula devised to meet entirely different conditions could constrain the court to hold that a corporation formed as a medium for the enjoyment of common rights of property owners owns no property which would benefit by enforcement of common rights and has no cause of action in equity to enforce the covenant upon which such common rights depends. . . . In substance, if not in form . . . there is privity of estate between the plaintiff and the defendant."

This is a strong and well-reasoned precedent of the highest court in the largest state of the union. Unless Illinois decisions are to the contrary, it is one which we should follow. To that end we will examine the pertinent Illinois cases.

In Van Sant v. Rose, 260 Ill. 401, 103 N. E. 194, cited in the Neponsit case, the defendants contended that in order to entitle a complainant to relief against the violation of a restrictive covenant prohibiting the erection of a flat building, such complainant must show some right or beneficial interest in the land affected by the covenant or in adjoining lands which would be injured as a result of failure to keep the covenant. The court held that while a bill to enjoin a breach of

restrictive covenants cannot be maintained by one having no connection with or interest in their enforcement, the fact that the plaintiffs owned no property in the vicinity that would be affected by a breach of the covenants or that they would in any other manner sustain damages did not deprive them of their interest and right to sue. The plaintiffs in that case were the original grantors and covenantees, but the opinion makes it clear that the law of Illinois with respect to covenants is not so strictly defined as to require in all cases that the one seeking enforcement must show some right or beneficial interest in the land affected by the covenant or in the adjoining lands.

In Hays v. St. Paul M. E. Church, 196 Ill. 633, the court refused to enforce the restriction on the ground that it was not intended for the benefit of the complainant, but in its discussion of the general principles applicable to such cases said that in the case of building line restrictions imposed upon land sold in lots or parcels by agreements made with each purchaser, the inference is that the agreements are intended for the common benefit of all and *each may enforce the restriction against the others.*

In Brandenburg v. Country Club Bldg. Corp., 332 Ill. 136, the court said p. 145:

"The owner of real estate has the right to convey it subject to any restriction he may see fit to impose, and the only restriction upon such right is that it must be exercised with proper regard to public policy and that the conveyance must not be in restraint of trade. The purchasers from the grantee in a conveyance which imposes upon the grantee restrictions in the use of the land not opposed to public policy will be bound by the restrictions, and *equity will enforce them upon equitable principles* by injunction against their violation at the suit of any person in whom the right to enforce them is vested."

191

In Young v. Cramer, 38 Cal.App.2d 64, 100 P.2d 523 (1940), a different view is held. There the court cited with approval Werner v. Graham, 181 Cal. 174, 183 Pac. 945, 947, which adhered to the common-law principle that the owner of land may not create new and heretofore unknown estates. The court says with some regret that while the enforcement of such covenants against the grantees of the original parties is now too well-established to admit of question, the kind of covenants which will be so enforced are limited to what directly concerns and benefits the "dominant tenement." The facts in these cases are decidedly different from the case at bar, and in any event, the language of the New York court in its concluding paragraph in the Neponsit case is clearly applicable.

Nothing in the Illinois cases we have examined indicates a policy or trend opposed to what we think are the sound conclusions of the Neponsit case. The primary purpose of the plaintiff association is to enforce the covenants on behalf of and for the good of all 541 property owners who constitute its membership. The enforcement of such covenants as those here involved is based on sound equitable principles. It will, in a proper case, extend to requiring a defendant to repair an injury already done or to remove a structure already erected, but it is not every case which will call for such relief. Each case must be decided on its own circumstances. Brandenburg v. Country Club Bldg. Corp., 332 Ill. 136, 146.

The trial court should overrule the motion to dismiss and require the defendants to answer.

The order is reversed and the cause remanded, with directions to take such further proceedings as are not inconsistent with the views herein expressed.

Order reversed and cause remanded with directions.

McCORMICK, P. J. and ROBSON, J., concur.