608 So.2d 537 (1992)
PALM POINT PROPERTY OWNERS' ASSOCIATION OF CHARLOTTE COUNTY, INC., Appellant,
v.
Robert PISARSKI, and Lillian Pisarski, Appellees.
No. 91-03643.
District Court of Appeal of Florida, Second District.
November 13, 1992.
*538 Mira Staggers White of R. Earl Warren, P.A., Englewood, for appellant.
Robert A. Dickinson of Dickinson & Nipper, Englewood, for appellees.
BUCKLEW, SUSAN C., Associate Judge.
Palm Point Property Owners Association sued Robert and Lillian Pisarski, seeking to enjoin the Pisarskis from violating certain deed restrictions in their construction of a swimming pool, stem wall, and dock on their lot in the Palm Point subdivision. The Pisarskis maintained that the plaintiff, which is an incorporated homeowners' association that is neither a direct successor to the interests of the developer nor an owner of any property within the subdivision, lacked standing to pursue this action. After according the plaintiff several opportunities to amend the complaint, the court dismissed the suit with prejudice. We affirm.
Palm Point Property Owners' Association is comprised entirely of property owners, any one of whom could sue to enforce the restrictions at issue in this case. See Osius v. Barton, 109 Fla. 556, 147 So. 862 (1933). However, Palm Point is not, as we have stated, a direct successor to the interests of the developer, nor does provision for such an association appear in the grantor's original subdivision scheme. The narrow question with which we are concerned, then, is whether Palm Point has standing to sue.
This is a question that is easier to answer when the homeowners' association is either a direct successor to the developer or was contemplated by the original subdivision documents. For instance, in Neponsit Property Owners' Ass'n, Inc. v. Emigrant Industrial Sav. Bank, 278 N.Y. 248, 254, 15 N.E.2d 793, 795 (N.Y.Ct.App. 1938), the court stated, "There can be no doubt that Neponsit Realty Company intended that the covenant should run with the land and should be enforceable by a property owners association against every owner of property in the residential tract which the realty company was then developing." Similarly, in Merrionette Manor Homes Improvement Ass'n v. Heda, 11 Ill. App.2d 186, 187, 136 N.E.2d 556, 557 (Ill. App. 1956), the court noted that the "association has no legal title to any property in the area, but the prospect of the formation of such an association for the purpose of requiring conformance was set out in the declaration establishing the restrictive covenants." See also Wisniewski v. Kelly, 175 Mich. App. 175, 178, 437 N.W.2d 25, 27 (Mich. App. 1989) (grantor anticipated need for association to manage areas outside authority and jurisdiction of individual lot owners). In those cases the courts allowed the property owners' associations to maintain suits to enforce covenants.
In this case, however, although the original subdivision declaration is silent on the need for an owners' association, the owners of a majority of the lots formed one in 1981. The stated purpose of the association was "promotion of the best interests of the property owners of Palm Point subdivision." In its articles of incorporation *539 the association did not state that it was being formed to maintain lawsuits to enforce the subdivision restrictions, but the modified restrictions do require submission of plans for approval of specifications and also provide for assessment of court costs and legal expenses against those who violate the restrictions. At least the implied intent of the organization was that it be able to enforce the standards of which it was to be the arbiter and to insure that restrictions were followed without the necessity for any individual lot owner to incur the burdens of litigation.
Although assumption of the litigator's mantle may have been a purpose of the organization, we can find no Florida cases specifically supporting that role. The parties have urged us to consider cases from other jurisdictions, particularly Conestoga Pines Homeowners' Ass'n, Inc. v. Black, 689 P.2d 1176 (Colo. App. 1984), and Beech Mountain Property Owners Ass'n v. Current, 35 N.C. App. 135, 240 S.E.2d 503 (1978). In Conestoga Pines the Colorado court permitted a voluntary homeowners' association to represent its members in a suit to enforce a restrictive covenant against the keeping of goats on subdivision property. Using the test outlined in Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), the court found that the association's members would otherwise have standing to sue in their own right, that the interests the association sought to protect were germane to its purpose, and that neither the claim nor the relief required participation of individual members in the lawsuit. In Beech Mountain, however, the North Carolina court took a conservative view. Because the homeowners' association owned no property at Beech Mountain, it could not claim the benefit of the provision in the declaration of restrictions that granted enforcement rights to any of the owners of the lots. Furthermore, the court assumed, had the grantor intended an association to enforce the provisions as an agent of the property owners, it would have expressed that intent in the original documents. Accordingly, the North Carolina court held that the property owners' association lacked standing.
We have also looked to analogous situations in Florida to resolve this issue. Our supreme court has recognized that the peculiar features of condominium associations and mobile homeowners' associations underscored the need for procedures to settle disputes affecting unit owners concerning matters of common interest. In Avila South Condominium Ass'n, Inc. v. Kappa Corp., 347 So.2d 599 (Fla. 1977), the supreme court promulgated Rule 1.221 of the Florida Rules of Civil Procedure, bestowing upon condominium associations the capacity to sue. Similarly, in Lanca Homeowners v. Lantana Cascade, 541 So.2d 1121 (Fla. 1988), the supreme court addressed the needs of mobile homeowners' associations and promulgated Rule 1.222. Both of those cases dealt with unconstitutional incursions into the supreme court's rule-making authority by the legislature, which had attempted to confer standing on such associations by statute. The promulgation of these rules endowed these associations with the authority to pursue resolution of problems of mutual concern and common interest. The same procedural vehicle should be available to a property owners' association of the type involved in this case. Without promulgation of such a rule by the supreme court, however, we hold that Palm Point lacked capacity to maintain this action.
Accordingly, we affirm the order of dismissal but certify the following question to the Florida Supreme Court:
ABSENT A SPECIFIC RULE OF PROCEDURE, DOES A PROPERTY OWNERS' ASSOCIATION THAT IS NOT A DIRECT SUCCESSOR TO THE INTERESTS OF THE DEVELOPER AND PROVISION FOR WHICH DOES NOT APPEAR IN THE GRANTOR'S ORIGINAL SUBDIVISION SCHEME HAVE STANDING TO MAINTAIN AN ACTION TO ENFORCE RESTRICTIVE COVENANTS?
RYDER, A.C.J., and PATTERSON, J., concur.