626 So.2d 195 (1993)
PALM POINT PROPERTY OWNERS' ASSOCIATION OF CHARLOTTE COUNTY, INC., Petitioner,
v.
Robert PISARSKI and Lillian Pisarski, Respondents.
No. 80840.
Supreme Court of Florida.
October 21, 1993.
R. Earl Warren of R. Earl Warren, P.A., Englewood, for petitioner.
Robert A. Dickinson of Robert A. Dickinson, A Chartered Professional Ass'n, Englewood, for respondents.
KOGAN, Justice.
We have for review Palm Point Property Owners' Ass'n of Charlotte County, Inc. v. Pisarski, 608 So.2d 537 (Fla. 2d DCA 1992), in which the Second District Court of Appeal certified the following question for our consideration:
ABSENT A SPECIFIC RULE OF PROCEDURE, DOES A PROPERTY OWNERS' ASSOCIATION THAT IS NOT A DIRECT SUCCESSOR TO THE INTERESTS OF THE DEVELOPER AND PROVISION FOR WHICH DOES NOT APPEAR IN THE GRANTOR'S ORIGINAL SUBDIVISION SCHEME HAVE STANDING TO MAINTAIN AN ACTION TO ENFORCE RESTRICTIVE COVENANTS?
608 So.2d at 539. We have jurisdiction pursuant to Article V, § 3(b)(4) of the Florida Constitution.
The Palm Point Property Owners' Association (Palm Point) sought to enjoin Robert and Lillian Pisarski from violating certain deed restrictions in their construction of a swimming pool, stem wall, and dock on the Pisarski's lot in the Palm Point subdivision. The Pisarskis filed a motion to dismiss, taking the position that, as an incorporated homeowners' association that is neither a direct successor to the interests of the developer nor an owner of any property within the subdivision, Palm Point lacked standing to pursue the action. After allowing several *196 amendments to the complaint, the trial court dismissed the action with prejudice.
The district court affirmed the dismissal. Finding no authority on point in Florida, the district court concluded that in the absence of a rule similar to those adopted by this Court that grant standing to condominium and mobile home owners' associations,[1] Palm Point lacked standing to maintain the action against the Pisarskis. 608 So.2d 537.
Palm Point urges this Court to utilize the doctrine of "associational standing" to allow it to bring suit to enforce restrictive covenants on behalf of its members. In the alternative, the association asks us to adopt an emergency rule of procedure granting property owners' associations standing to bring suit on behalf of their members. For the reasons expressed below we decline both suggestions and answer the certified question in the negative.
In Osius v. Barton, 109 Fla. 556, 562, 147 So. 862, 865 (1933), this Court explained:
The general theory behind the right to enforce restrictive covenants is that the covenants must have been made with or for the benefit of the one seeking to enforce them. The violation of a restrictive covenant creating a negative easement may be restrained at the suit of one for whose benefit the restriction was established, irrespective of whether there is privity of estate or of contract between the parties, or whether an action at law is maintainable.
See also, Bessemer v. Gersten, 381 So.2d 1344, 1348 n. 4 (Fla. 1980) (right to enforce a covenant generally belongs to the holder of benefited land); Maurice T. Brunner, Annotation, Who May Enforce Restrictive Covenant or Agreement as to Use of Real Property, 51 A.L.R.3d 556 (1973). It is undisputed that the covenants in question were not made with or for the benefit of Palm Point.
As noted by the district court, it would be easier to find that Palm Point has standing to enforce the restrictive covenants if Palm Point were a direct successor to the developer's interests[2] or if the developer had expressly assigned its right of enforcement to Palm Point in the original subdivision documents.[3] However, neither is the case here.
Palm Point urges us to follow the lead of the Colorado Court of Appeals in Conestoga Pines Homeowners' Ass'n, Inc. v. Black, 689 P.2d 1176 (Colo. App. 1984), and expand the doctrine of associational standing[4] announced in Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), to encompass cases such as this. This is not the first time this Court has been asked to look to the Hunt decision for guidance on the issue of *197 standing. In Florida Home Builders Ass'n v. Department of Labor and Employment Security, 412 So.2d 351 (Fla. 1982), we recognized a modified version of associational standing for trade and professional associations seeking to institute rule challenges under section 120.56(1), Florida Statutes (1979). However, our recognition of associational standing in the chapter 120 context was not a blanket adoption of the doctrine. Granting trade and professional associations standing to represent their members was necessary in order to further the legislative purpose of expanding the public's ability to contest the validity of agency rules. 412 So.2d at 352-53.
There is no similar policy for expanding the class of those who may enforce restrictive covenants. To the contrary, the long-standing rule that covenants that run with the land must be strictly construed in favor of the free and unrestricted use of real property[5] calls for a more restrictive application of the rules of standing in this area. See Beech Mountain Property Owners' Ass'n v. Current, 35 N.C. App. 135, 240 S.E.2d 503 (1978) (employing rule of strict construction to deny property owners' association that was not assignee of grantor standing to enforce restrictive covenants). Our refusal to grant homeowners' associations standing to enforce restrictive covenants as representatives of their members also avoids various problems we foresee, such as the possible preclusion of certain defenses that otherwise might be available against individual property owners.
We also decline to adopt a rule granting homeowners' associations standing to bring suit to enforce restrictive covenants as representatives of their members. Rules of Civil Procedure 1.221 and 1.222 granting condominium and mobile home owners' associations standing to bring suit on behalf of their members were adopted in response to extensive legislation setting forth the framework for and the powers and duties of condominium and mobile home owners' associations. See Lanca Homeowners, Inc. v. Lantana Cascade of Palm Beach, Ltd., 541 So.2d 1121 (Fla. 1988), cert. denied, 493 U.S. 964, 110 S.Ct. 405, 107 L.Ed.2d 371 (1989); Avila South Condominium Ass'n v. Kappa Corp., 347 So.2d 599 (Fla. 1977); see also §§ 718.111, .112, .113, .114,.116, Fla. Stat. (Supp. 1976) (condominium associations); §§ 723.075, .076, .077, .078, .079, Fla. Stat. (1985) (mobile home owners' associations). There is no similar legislation setting forth a uniform framework for the establishment of and membership in property owners' associations such as Palm Point.
In adopting rules 1.221 and 1.222, we recognized the Legislature's authority to create capacity in condominium and mobile home owners' associations to maintain suit but rejected the Legislature's attempt to design a procedural vehicle for vindicating substantive rights. Lanca Homeowners, 541 So.2d at 1123. In light of the unique features of condominium ownership and mobile home residency, the virtue of the policy sought to be furthered by the Legislature's attempt to provide a procedural format for resolving disputes concerning matters of common interest to association members was apparent. Id. We find no equally compelling policy reason for providing a special vehicle for the enforcement of restrictive covenants. Moreover, it appears the primary purpose of the infirm statutes[6] and resulting rules was to provide a procedural vehicle to settle disputes between unit/homeowners and third parties, such as mobile home park owners and condominium developers. In sum, after reviewing our decisions in Avila South Condominium Ass'n and Lanca Homeowners, we do not believe an emergency rule granting homeowners' associations standing to enforce restrictive covenants is warranted.
Accordingly, since Palm Point has not shown that it is the assignee of the developer's right of enforcement or that the covenants were created for its benefit, the decision below is approved. However, on remand, the individual property owners, who joined in the third amended complaint and who clearly have standing to enforce the *198 covenants, should be allowed to continue in the action.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES and HARDING, JJ., concur.
NOTES
[1] Florida Rules of Civil Procedure 1.221 and 1.222, respectively.
[2] See Bessemer v. Gersten, 381 So.2d 1344, 1348 n. 4 (Fla. 1980) (successor to the interest of grantor, as party with duty to pay rent on recreational land, could enforce covenant to pay share of rental obligation against lot owner).
[3] See Merrionette Manor Homes Improvement Ass'n v. Heda, 11 Ill. App.2d 186, 136 N.E.2d 556 (1956) (homeowners' association had standing to enforce covenants as assignee of developer, where prospect of the formation of such an association for the purpose of enforcement was set forth in the declaration establishing the restrictive covenants and association was later formed by developer for such purpose); Neponsit Property Owners' Ass'n v. Emigrant Indus. Sav. Bank, 278 N.Y. 248, 15 N.E.2d 793 (1938) (home-owners' association that was created by developer to act as assignee of the benefit of covenant in deed had standing to enforce covenant); see also, § 68.06, Fla. Stat. (1991), which provides in pertinent part:

All bonds ... covenants, deeds, ... and other written instruments not under seal have the same force and effect ... as bonds and instruments under seal. The assignment or endorsement of any instrument vests the assignee or endorsee with the same rights, powers, and capacities as were possessed by the assignor or endorser. The assignee or endorsee may bring action thereon.
[4] Under this doctrine,

an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.
Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).
[5] Washingtonian Apartment Hotel Co. v. Schneider, 75 So.2d 907 (Fla. 1954); Moore v. Stevens, 90 Fla. 879, 106 So. 901 (1925).
[6] § 711.12(2), Fla. Stat. (1975); § 718.111(2), Fla. Stat. (Supp. 1976); § 723.079(1), Fla. Stat. (1985).