**ARCHITECTURAL COMMITTEE OF THE MOUNT OLYMPUS COVE SUBDIVISION NO. 3, Plaintiff and Appellant,**

v.

**Amy E. KABATZNICK, Defendant and Appellee.**

**No. 970188–CA.**

Court of Appeals of Utah.

Dec. 4, 1997.

Gary G. Sackett, Glen D. Watkins, and Andrew H. Stone, Salt Lake City, for Appellant.

L. Benson Mabey, Salt Lake City, for Appellee.

Before DAVIS, P.J., and BENCH and JACKSON, JJ.

## OPINION

BENCH, Judge:

Plaintiff Architectural Committee of the Mount Olympus Cove Subdivision No. 3 (Committee) appeals the trial court's decision granting defendant Amy E. Kabatznick's motion to strike the Committee's complaint and to dismiss the case on standing grounds. We reverse and remand for further proceedings.

## BACKGROUND

Mount Olympus Cove Subdivision No. 3 was formed in 1966. The subdivision adopted restrictive covenants running with the land that were recorded in the Salt Lake County Recorder's office. The covenants applied to lots two through forty-nine of the subdivision and provided for the establishment of the Committee. Before any construction could take place in the subdivision, the Committee had to approve all building plans "as to conformity and harmony of external design with existing structures in the development."

Defendant owns lot twenty-eight of the subdivision and, in 1994, hired a contractor to demolish the existing home and build a new home on the site. Upon seeing extensive work being done on defendant's lot, the Committee, through its chairman, wrote a letter reminding defendant of the covenants that require the Committee to approve building and design plans before any construction. Defendant's contractor then delivered the plans to the Committee. After reviewing the plans, the Committee rejected the external design of the structure as "not in conformity and harmony with existing structures in the subdivision." Further attempts to resolve the matter between the Committee and defendant were unsuccessful.

The Committee filed a complaint both to enjoin defendant from further construction until the Committee approved the changes and to require defendant to dismantle or modify newly constructed portions of the home that did not meet the Committee's approval. After nearly a year had passed, and after substantial discovery, defendant moved to dismiss the Committee's complaint for lack of standing. The motion was argued before the trial court, and the court held that the action could proceed only if the Committee joined or substituted all Committee members who also owned property in the subdivision.

The Committee filed an amended complaint and joined as plaintiffs three members of the Committee who were property owners in the subdivision. Defendant moved to strike the Committee's amended complaint and renewed her motion to dismiss. The trial court granted defendant's motions and ruled that the Committee lacked standing to pursue the action. The Committee then moved for leave to file a second amended complaint. The trial court denied the Committee's motion as moot. This appeal followed.

## ISSUE AND STANDARD OF REVIEW

■ The Committee claims the trial court erred in dismissing the complaint for lack of standing. "Whether a plaintiff has standing is a question of law and we accord no deference to the ruling of the trial court." *Provo*

*City Corp. v. Willden,* 768 P.2d 455, 456 (Utah 1989).

## ANALYSIS

■ The Committee argues that although it is not a corporation, partnership, or other such legal entity and does not own property in the subdivision, it nonetheless has standing as an association to pursue the action on behalf of its members. To support this argument, the Committee cites *Utah Restaurant Ass'n v. Davis County Bd. of Health,* 709 P.2d 1159 (Utah 1985). That case provides that an association has standing to bring an action on behalf of its members when: "(i) the individual members of the association have standing to sue; and (ii) 'the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause.'" *Id.* at 1163 (quoting *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975)); *see also Society of Prof'l Journalists v. Bullock,* 743 P.2d 1166, 1175 (Utah 1987); *West Valley City Fraternal Order of Police Lodge No. 4 v. Nordfelt,* 869 P.2d 948, 952 (Utah.Ct.App. 1993). These two criteria, if met, give an association standing to pursue both declaratory and injunctive relief. *See Utah Bankers Ass'n v. America First Credit Union,* 912 P.2d 988, 991 (Utah 1996).

■ Defendant admits that the individual property owners can sue in their individual capacity by virtue of the covenants. Thus, the first requirement of standing for an association is met. *See Utah Restaurant Ass'n,* 709 P.2d at 1163. The second requirement relates to a conflict of interest among association members such that the association is unable to "properly represent[ ] the interests of all of its members." *Nordfelt,* 869 P.2d at 952 ("If conflicts of interest exist within an organization, individual participation is necessary and thus, the association generally cannot have standing."). In the case at bar, there is no allegation of conflict of interest or claim that all injured property owners cannot adequately be represented by the association. Therefore, both requirements of the Utah test for association standing are met.

■ Defendant argues, however, for a third requirement for association standing, insisting that a statute or rule must grant an association standing to pursue an action on behalf of its members. *See, e.g., Cottonwood Mall v. Sine,* 767 P.2d 499, 500–01 (Utah 1988) (holding joint venture had standing through partnership statutes); *Brickyard Homeowners' Ass'n v. Gibbons Realty,* 668 P.2d 535, 542–43 (Utah 1983) (holding condominium association given standing by statute); *Wall Inv. Co. v. Garden Gate Distrib.,* 593 P.2d 542, 544 (Utah 1979) (holding limited partnership authorized to sue per statute). None of these cases involve an association suing in a representative capacity. The cases dealing with such an association require only the two elements mentioned. *See Utah Bankers Ass'n,* 912 P.2d at 991; *Society of Prof'l Journalists,* 743 P.2d at 1175; *Utah Restaurant Ass'n,* 709 P.2d at 1163; *Nordfelt,* 869 P.2d at 952. We are unaware of any Utah case that requires a statute or rule before an association may pursue injunctive or declaratory relief on behalf of its members.

Nonetheless, defendant cites cases from other jurisdictions supporting her argument against allowing an association to sue in a representative capacity. Defendant cites *Palm Point Property Owners' Ass'n v. Pisarski,* 626 So.2d 195 (Fla.1993) and *Beech Mountain Property Owners' Ass'n v. Current,* 35 N.C.App. 135, 240 S.E.2d 503 (1978), as examples of jurisdictions that do not allow an association such standing. In *Pisarski,* the Florida Supreme Court declined to recognize association standing of a homeowners' association because, in its opinion, covenants running with the land are better enforced by owners. *See Pisarski,* 626 So.2d at 197. The *Pisarski* court also denied standing to the association because certain defenses are only available to individual property owners and because it found no compelling policy to permit an association to enforce restrictive covenants. *See id.* at 197. Similarly, in *Current,* the North Carolina Court of Appeals strictly construed covenants running with land to preclude an association from maintaining an action on behalf of its members in the absence of an express provision in the

covenants. *See Current,* 240 S.E.2d at 506–07.

Other jurisdictions have held otherwise. For example, in *Conestoga Pines Homeowners' Ass'n, Inc. v. Black,* 689 P.2d 1176 (Colo.Ct.App.1984), the Colorado Court of Appeals allowed a homeowners' association to pursue injunctive relief in a representative capacity. In so ruling, the Colorado court followed the United States Supreme Court's analysis of association standing in *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), and *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).[1] In *Black,* the association was permitted to seek relief in a representative capacity because (1) the individual property owners were authorized to enforce the restrictions against a neighbor who wrongfully kept goats on his property, and (2) the participation of any particular landowner was not necessary for proper adjudication. *See Black,* 689 P.2d at 1177.

 We believe the law in this jurisdiction corresponds more closely with the *Black* analysis rather than the *Pisarski* analysis. Just as the *Pisarski* court stated policy concerns against allowing an association to represent its members, the Utah Supreme Court has specified policy considerations that favor association standing:

> [A]ssociational standing has the advantage of permitting the prosecution of legitimate claims by an entity with the capacity to spread the costs of litigation among its members and to assume the burdens incident of it, rather than requiring a single litigant to carry the entire load. To deny an association standing under such circumstances just might deter the assertion of valid claims without serving any countervailing public purpose. We decline to take such a sterile approach to standing and adopt the test above stated [*Warth v. Seldin*] for determining an association's standing to sue.

*Utah Restaurant Ass'n,* 709 P.2d at 1163.

Like the *Black* court, we see no reason to require all landowners or any particular land-owner in the subdivision to participate in this action. We conclude that the analysis of *Black* and the legal principles and policy considerations described in *Utah Restaurant Ass'n* vest the Committee with standing to pursue injunctive relief in a representative capacity. Whether the Committee can show it is entitled to the relief it seeks must be determined by the trial court.

### CONCLUSION

We reverse the trial court's order striking and dismissing the Committee's complaint. The Committee's cause of action is reinstated and the case is remanded for further proceedings on the original complaint.

DAVIS, P.J., and JACKSON, J., concur.

---

1. The *Warth* analysis was also adopted by the Utah Supreme Court in *Utah Restaurant Ass'n,* 709 P.2d at 1163.