863 So.2d 294 (2003)
NAACP, INC., etc., et al., Petitioners,
v.
FLORIDA BOARD OF REGENTS, et al., Respondents.
No. SC02-1878.
Supreme Court of Florida.
November 13, 2003.
Daniel H. Thompson of Berger Singerman, Tallahassee, FL; and Mitchell W. Berger of Berger Singerman, Fort Lauderdale, FL, for Petitioners.
Daniel Woodring, Office of the General Counsel, Florida Dept. of Educ., Tallahassee, FL, for Respondents.
*295 Arthur J. England and Elliot B. Kula of Greenberg Traurig, P.A., Miami, FL; and Woody N. Peterson, Bradley D. Wine, Timothy D. Sparapani, and Eden M. Polatnick of Dickstein Shapiro Morin & Oshinsky LLP, Washington, DC, for AARP; Academy of Florida Trial Lawyers, Inc.; Alliance of Healthcare and Professional Employees, NUHHCE, AFSCME, AFL-CIO; American Civil Liberties Union of Florida; Eathjustice, Farmworker Association of Florida, Inc.; Federation of Physicians and Dentists/Alliance of Healthcare and Professional Employees, NUHHCE, AFSCME, AFL-CIO; Florida AFL-CIO; Florida Consumer Action Network, Inc.; Florida Education Association; Florida League of Conservation Voters, Inc.; Florida National Organization for Women, Inc.; Florida Public Employees Council 79, AFSCME, AFL-CIO; Florida Wildlife Federation; Florida Women's Consortium; Floridians for Alternatives to the Death Penalty; International Brotherhood of Teamsters on Behalf of Its Florida Local Unions173 (Bradenton), 512 and 947 (Jacksonville), 390 and 769 (Miami), 385 (Orlando), and 79 (Tampa); 1000 Friends of Florida, Inc.; Save Our Suwannee, Inc.; The Sierra Club; and Trial Lawyers For Public Justice, Amici Curiae.
David Lipman, Miami, FL; and Thomas J. Henderson, Michael L. Foreman, and Audrey J. Wiggins, Lawyers' Committee for Civil Rights Under Law, Washington, DC, for The Lawyers' Committee for Civil Rights Under Law, Mexican American Legal Defense and Educational Fund, National Asian Pacific American Legal Consortium, and National Abortion and Reproductive Rights Action League, Amici Curiae.
ANSTEAD, C.J.
We have for review a decision of a district court of appeal on the question of a voluntary association's standing to bring a rule challenge in Florida administrative proceedings. The district court certified the question to be of great public importance:
DO APPELLANTS/CROSS-APPELLEES HEREIN HAVE STANDING TO MAINTAIN CHALLENGES TO THE SUBJECT RULES?
NAACP, Inc. v. Florida Bd. of Regents, 822 So.2d 1, 14 (Fla. 1st DCA 2002). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons set forth below, we answer the certified question in the affirmative and quash the First District's decision.[1]

PROCEEDINGS TO DATE
The National Association for Advancement of Colored People, Inc. (hereinafter NAACP), and its members Mattie Garvin and Keith Garvin (Garvins), brought a rule challenge to the Board of Regents' amendments to Florida Administrative Code Rules 6C-6.001 and 6C-6.002 concerning admissions to the State University System. The rule amendments concerned the elimination of certain affirmative action policies by Florida's state universities. The association claimed that in addition to its traditional *296 role as an advocacy group for minority rights, its membership included a large number of middle school, high school, and university students who would be affected by the change in policy. The petitioners brought the rule challenge pursuant to section 120.56(1)(a), Florida Statutes (1999), which states in pertinent part: "Any person substantially affected by a rule or a proposed rule may seek an administrative determination of the invalidity of the rule on the ground that the rule is an invalid exercise of delegated legislative authority."
The Board of Regents and the Board of Education filed a motion to dismiss for lack of standing, arguing that the allegations of the petition were legally insufficient to demonstrate that any of the petitioners had standing, either individually or in a representative capacity, because they failed to specifically demonstrate how they, or any of NAACP's members, would suffer an actual injury because of the amendments. The administrative law judge (ALJ), held a hearing on the motion to dismiss and denied the motion, finding that the petitioners had presented sufficient evidence to establish NAACP's "associational standing ... to represent [its] members as persons substantially affected by the proposed amendments," and that the Garvins were "substantially affected by the proposed amendments to [r]ules 6C-6.001 and 6C-6.002." NAACP, 822 So.2d at 3.[2] The ALJ found that "significant numbers" of middle school, high school, and college students stand to be substantially affected by the rule amendments. Id. at 4.
The First District summarized the ALJ's decision as follows:
Regarding the merits of the rule challenge, the ALJ held that the repeal of rule 6C-6.001(10)(e)6 (which provided that, "[w]here necessary to achieve established equal access enrollment goals, up to ten percent of the students may be admitted to a limited access program with different criteria") was "an invalid exercise of delegated legislative authority"; but that all of the other challenged amendments were valid.
Id. at 3.[3]

APPEAL
The NAACP appealed the ALJ's decision to the First District, and the Florida Board of Regents and the State Board of Education cross-appealed. In rejecting the ALJ's decision as to petitioners' standing to bring a challenge to the admission rules, the First District stated:
We conclude that NAACP failed to present competent, substantial evidence to establish that any of its members would suffer "a real and sufficiently immediate injury in fact" because of implementation of any of the rule amendments *297 challenged. As a result, it failed to demonstrate that any of its members would be "substantially affected" by implementation of any of the challenged amendments. Therefore, it failed to carry its burden of establishing "associational standing" pursuant to the test announced in Florida Home Builders, and we need not consider whether it met the other requirements, including establishing "that the alleged interest [was] arguably within the zone of interest to be protected or regulated." We hold that NAACP lacked "associational standing" to challenge the rule amendments. Accordingly, we must reverse the ALJ's decision to the contrary.
Id. at 6. The First District reversed the ALJ's final order and remanded the case with directions for the ALJ to dismiss the rule challenge for lack of standing. Id. at 8.
Judge Browning dissented and expressed the view that the majority opinion conflicted with numerous prior First District decisions on standing as well as this Court's decision in Florida Home Builders Ass'n v. Department of Labor & Employment Security, 412 So.2d 351 (Fla.1982). Judge Browning summed up his dissenting position by stating:
[I]n my judgment, the crucial factor is how one weighs the impact of the proposed rules on African-Americans' admission rights to the SUS, as compared to their rights under the repealed affirmative action programs. My "scales" indicate African-American students' admission to the SUS under legally established affirmative action programs cannot be repealed by agency rules without giving those covered by such programs the right to challenge the repeal, because existing case law indicates they are "substantially affected" for rule challenge purposes. On the merits, Appellants might not be entitled to relief. However, they have the interest required as "substantially affected parties" to challenge the proposed rules' validity.
Id. at 14 (Browning, J., dissenting). Upon rehearing, the First District certified to this Court the question of petitioners' standing as one of great public importance. Id. at 14.

STANDING IN ADMINISTRATIVE PROCEEDINGS
In Florida Home Builders, the Florida Home Builders Association brought suit to challenge a rule adopted by the Bureau of Apprenticeship, Department of Labor and Employment Security. 412 So.2d at 352. The hearing officer found that the association had standing to bring the rule challenge under section 120.56, Florida Statutes (1979), but the First District reversed, finding that such an association was not a substantially affected party. Id. at 352 (citing Dep't of Labor & Employment Sec. v. Florida Home Builders Ass'n, 392 So.2d 21, 22 (Fla. 1st DCA 1980)). However, as in the instant case, the First District certified a question of great public importance:
Whether, under section 120.56, Florida Statutes, a trade association, which is not itself affected by an agency rule but some or all of whose members are substantially affected by the rule, may seek an administrative determination of the invalidity of the rule as a[n][in]valid exercise of delegated legislative authority.
Id. at 352. Upon review, this Court answered the certified question in the affirmative, disapproving the First District's decision and remanding the case for a review of the agency rule on the merits. Id. at 352, 354.
In our analysis of "associational standing" in Florida Home Builders, we concluded that the First District's interpretation was "an excessively narrow *298 construction of section 120.56(1)" and that it restricted public access to the processes provided in the Florida Administrative Procedure Act. Id. at 352. In our analysis of the statutorily created "associational standing," this Court explained that a key purpose of the legislation was to expand rather than restrict public participation in the administrative process:
We find the district court's restriction on the standing of associations is an excessively narrow construction of section 120.56(1) and results in restricted public access to the administrative processes established in the Florida Administrative Procedure Act, chapter 120, Florida Statutes (1979). Expansion of public access to the activities of governmental agencies was one of the major legislative purposes of the new Administrative Procedure Act. [n.2] In our view, the refusal to allow this builders' association, or any similarly situated association, the opportunity to represent the interests of its injured members in a rule challenge proceeding defeats this purpose by significantly limiting the public's ability to contest the validity of agency rules. While it is true that the "substantially affected" members of the builders' association could individually seek determinations of rule invalidity, the cost of instituting and maintaining a rule challenge proceeding may be prohibitive for small builders. Such a restriction would also needlessly tax the ability of the Division of Administrative Hearings to dispose of multiple challenges based upon identical or similar allegations of unlawful agency action.
[N.2]. "The principal purpose for the adoption of a wholly-revised administrative procedure act for Florida is to remedy massive definitional, procedural and substantive deficiencies in existing law ... (v) by broadening public access to the precedents and activities of agencies...." Reporter's Comments on Proposed Administrative Procedure Act for the State of Florida, March 9, 1974, at p. 3, reprinted in 3 A. England & L. Levinson, Florida Administrative Practice Manual at 79 (1979).
Id. at 352-53 & n. 2.
After reviewing the legislative history and purpose of chapter 120, we have concluded that a trade or professional association should be able to institute a rule challenge under section 120.56 even though it is acting solely as the representative of its members. To meet the requirements of section 120.56(1), an association must demonstrate that a substantial number of its members, although not necessarily a majority, are "substantially affected" by the challenged rule. Further, the subject matter of the rule must be within the association's general scope of interest and activity, and the relief requested must be of the type appropriate for a trade association to receive on behalf of its members.

Id. at 353-54 (emphasis supplied). We subsequently acknowledged that Florida Home Builders represents the standard for the breadth of standing in administrative rules challenge cases filed under section 120.56(1) in Palm Point Property Owners' Ass'n of Charlotte County, Inc. v. Pisarski, 626 So.2d 195, 197 (Fla.1993). In Palm Point, we discussed the ramifications of our holding in Florida Home Builders and again explained:
"Granting trade and professional associations standing to represent their members was necessary in order to further the legislative purpose of expanding the public's ability to contest the validity of agency rules." 626 So.2d at 197. As in Florida *299 Home Builders, we conclude the First District has again construed section 120.56(1) too narrowly. See Florida Home Builders, 412 So.2d at 352.
We conclude the First District failed to properly apply our holding in Florida Home Builders, expanding the rule of standing, when it overruled the ALJ's determination. The First District instead concluded that the NAACP "failed to demonstrate that any of its members would be `substantially affected' by implementation of any of the challenged amendments." 822 So.2d at 6 (emphasis supplied).[4] Similarly, we disagree with the First District's conclusion that the association had failed to assert any impact of the rule amendments different in kind than the amendments' impact on all Florida citizens.
Rather, we agree with the analysis of Judge Browning wherein he explained:
Finally, the majority seeks to support its result by determining that "In short the amendments have not been shown to have an impact on NAACP's members that is different from the impact of all citizens." If this statement were true, the majority's result would be correct. However, this is clearly not the case. Such a finding can be made only if the obvious impact on African-American students, as compared to nonminority students, under the proposed rules is misapprehended. Before enactment of the proposed rules, African-American students' admission to the SUS was under affirmative action programs as members of a recognized minority who, in certain circumstances, would receive a "boost" not available to non-minority students. A white male student and other non-minority students were not entitled to a similar advantage. The proposed rules effect a complete change and make African-American students subject to the identical admission standards as non-minority students. Thus, contrary to the majority's contention, the effect of the proposed rules on African-American students plainly differs from its effect on non-minority students, and this, without question, provides standing to the NAACP.
....
... The proposed rules drastically change the admission standards that apply to African-Americans' and other minority students' admission to the SUS. African-Americans constitute fifteen percent of the State's population, and their rights can best be asserted by the NAACP because "the cost of instituting and maintaining a rule challenge proceeding may be prohibitive" for the NAACP's members, who are often poor and unable to maintain individual rule challenges. See Florida Home Builders, 412 So.2d at 353.

Id. at 12-13. In short, we find that Judge Browning correctly noted that the association had asserted, and the ALJ had agreed, that a substantial number of the association's members were both prospective applicants to the State University System and were minorities that would obviously be affected by any change in policy concerning minority admissions. These conclusions are supported by the record and are properly predicated upon the essential requirements of our holding in Florida Home Builders.[5]
*300 It also appears that the First District was adopting a rule of standing that would require a challenge to demonstrate immediate and actual harm, i.e., rejection of admission to a state university by a member before standing would be granted. We required no such showing in Florida Home Builders. Indeed, such a holding would constitute a substantial narrowing of the concept of standing as defined in Florida Home Builders. Under our holding there the required showing is that there would be a substantial effect of the rule change on a substantial number of the association's members. There is no dispute the NAACP's student members constitute a substantial number of its membership. Further, we agree with the finding of the ALJ that, while not specifically identifying its student members as current applicants to the university system, the association has demonstrated a sufficient impact on its student members as genuine prospective candidates for admission to the state university system to meet the requirement of substantial impact.
Similarly, we did not impose a requirement in Florida Home Builders that an association would have to prove that one of its members would actually prevail on the merits in a rule challenge in order to establish associational standing. Such a concept improperly mixes the issue of merit with the issue of standing. Conversely, of course, we caution that just because the NAACP can establish "associational standing" under section 120.68(1), Florida Statutes (2002), and Florida Home Builders does not mean that it will automatically prevail on the rule challenge.
Finally, we note that Judge Browning also pointed out the seeming incongruity of the majority's holding with prior decisions of the same court liberally applying the rule of standing announced by this Court in Florida Home Builders:
Moreover, there exists no rational basis upon which to allow individuals' fear of injuries to manatees and their habitat, regulation of professionals, and use of endangered lands, etc., to support standing, and deny a similar status to the NAACP's minority students faced with the repeal of affirmative action programs. If this is the correct status of the law, it should be sanctioned by the Florida Supreme Court, not a split panel of this court.
NAACP, 822 So.2d at 13 (Browning J., dissenting).[6] In other words, Judge Browning was suggesting that it made little *301 sense to grant standing to persons who had formed associations out of a common interest in protecting wildlife or the environment, and yet deny standing to an association that was formed to protect the rights of minorities and is composed substantially of minorities, when policy concerning the admission of minorities to state universities was changed. We agree.
Accordingly, we quash the First District's decision and remand for further proceedings in accord with this opinion.
It is so ordered.
PARIENTE, LEWIS, and QUINCE, JJ., concur.
WELLS, J., dissents with an opinion, in which CANTERO and BELL, JJ., concur.
WELLS, J., dissenting.
I dissent because I would not answer the certified question. I would remand to the district court for consideration of the issue of whether this case is moot.
Respondents have raised the issue of mootness because of the adoption, in November 2002, of article IX, section 7 of the Florida Constitution.[7] Section 7(d) provides that the Board of Governors "shall operate, regulate, control, and be fully responsible for the management of the whole university system." By this amendment, the Board of Governors has become a constitutionally created and empowered governmental body, replacing the legislatively created and empowered Board of Regents.[8]
*302 The present case is a rule challenge brought pursuant to section 120.56(1)(a), Florida Statutes (1999). The challenged rules were adopted pursuant to chapter 120, Florida Statutes (1999), which is the Administrative Procedure Act (APA). In their brief to this Court, petitioners point out that their central argument before the administrative law judge was that "under § 240.233, Fla. Stat. (1999), the Legislature gave authority over the regulation of student admissions to individual universities within the [State University System] and not to the Board [of Regents] except under very limited circumstances not applicable here." Initial Brief of Petitioners at 2. The issue of mootness here presents the concern of whether the APA or the Legislature governs the constitutionally created and empowered Board of Governors. This is an important question similar to that with which this Court dealt in the application of the APA to the new, constitutionally created Florida Fish and Wildlife Conservation Commission in Caribbean Conservation Corp., Inc. v. Florida Fish & Wildlife Conservation Commission, 838 So.2d 492 (Fla.2003).
This question is particularly important and here requires careful scrutiny for two reasons. First, the claims which petitioners make are wholly prospective. Neither of the petitioners claim that the rules they seek to challenge have affected adversely any particular student applications or that petitioner NAACP has members who have actually been denied admittance to universities because of the changes to the rules. Since what is being sought is a prohibition against the changes to the rules that are applicable to future applications, it is self-evident that this appeal is contingent upon a determination of whether the rules adopted by the former Board of Regents, which was legislatively empowered, have any continuing effect now that the Board of Governors, which is constitutionally empowered, has superseded the Board of Regents. Plainly, if the rules adopted by the Board of Regents have no effect on future admissions, then this case should be dismissed and the decision of the district court vacated so that the case will not set precedent since the decision would relate to a dispute that no longer has any meaning.
The second reason that the issue of mootness is important and requires careful scrutiny is that it has a direct bearing on the continuing power of the Legislature in respect to governance of the State University System. If this case were held not to be moot, it could have the meaning that the Legislature continues to have power to regulate and control the State University System even though the constitution has been amended to give that power to the newly created Board of Governors.
In response to respondents' suggestion of mootness, petitioners raise many interesting questions material to the governance of the State University System.[9] *303 Among other matters raised is the assertion that the Board of Governors, in January 2003, adopted the rules promulgated by the Board of Regents. This brings into focus the question of whether those rules can be challenged in accord with section 120.56, which provides that the basis to challenge an agency rule is that the rule exceeds legislative authority. Inherent within this issue is the question of what legislative authority there is to exceed a rule adopted by a constitutionally rather than a legislatively created body. Secondary to this question is the question posed by petitioners as to what, if section 120.56 does not apply, is the proper procedure for challenging a rule of the Board of Governors.
In view of the import and significance of these questions to the governance of the State University System and to the rules promulgated by other constitutionally created bodies, the issue of mootness in this case requires careful consideration. A decision on standing in this case should not influence the decision as to standing in another case addressing rules adopted by the Board of Governors. If the issue in this case is moot, the parties should begin with a clean slate in respect to the Board of Governors' rules.
Frankly, the issue of mootness, with its subsidiary questions, has not been adequately briefed in this Court. I conclude that the wisest course would be to remand this case to the district court without answering the certified question. I would direct the district court to consider the issue of mootness, and if it decides the present case is moot, to vacate its prior opinion and remand the case to the administrative law judge for dismissal of the case without prejudice as to any challenge made to rules adopted by the Board of Governors. I believe that for the parties this would be the fairest manner in which to proceed.
CANTERO and BELL, JJ., concur.
NOTES
[1] The respondents have suggested to this Court that the instant case is moot because the rules and amendments at issue have now been adopted by a separate governmental entity with constitutional authority to enact such rules, thus invalidating a challenge under section 120.56(1)(a), Florida Statutes (1999). However, we decline the suggestion. See Holly v. Auld, 450 So.2d 217, 218 n. 1, (Fla. 1984) ("It is well settled that mootness does not destroy an appellate court's jurisdiction... when the questions raised are of great public importance or are likely to recur."). However, our decision in this case should not be construed to preclude the parties from raising the issue of mootness in the district court on remand.
[2] The opinion below explains the interests of Mattie and Keith Garvin in this case:

Appellant Keith Garvin is an African-American who was in the tenth grade at a Florida public high school. He was also active in the NAACP Youth Council. He had not applied to any university, but, upon graduation from high school, hoped to major in computer science or engineering at a university in the State University System. Appellant Mattie Garvin is Keith's mother. She was a member of NAACP, and was interested in "provid[ing] her son ... with the best possible educational opportunities."
NAACP, 822 So.2d at 6-7.
[3] The petitioners also challenged rule 6C-6.003, relating to admissions to graduate and professional schools. The ALJ held that the petition's allegations were legally insufficient to demonstrate standing as to NAACP in its individual capacity and as to the Garvins' standing to challenge the rule amendments. NAACP, 822 So.2d at 3. The petitioners have never challenged that decision on appeal and it is not a subject of this review.
[4] In the instant case, the First District did conclude that the NAACP technically qualified as an "association" under our decision in Florida Home Builders, although it is not a trade or professional association. NAACP, 822 So.2d at 4.
[5] It also appears the First District took the position the NAACP did not have "associational standing" in this case because it did not consider Keith Garvin and his mother as providing the NAACP with a good example of association members who were going to suffer "a real and sufficiently immediate injury in fact" under the challenged rule amendments. 822 So.2d at 6. However, both federal and Florida case law agree that when an association is seeking standing, the individual members are not required to participate. See Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); Florida Home Builders, 412 So.2d at 353. Rather, both federal and Florida case law on this subject are well settled that "associational standing" for administrative challenges is contingent on the organization's demonstration that many of its members, in general, stand to be affected by the rule. See Florida Home Builders, 412 So.2d at 353.
[6] Judge Browning cited several First District cases, stating: "In keeping with the rationale expressed by Florida Home Builders, this court has found sufficient standing in analogous situations to support a rule challenge by associations." 822 So.2d at 9; see Southwest Florida Water Mgmt. Dist. v. Save the Manatee Club, Inc., 773 So.2d 594 (Fla. 1st DCA 2000); Friends of the Everglades, Inc. v. Bd. of Trs. of Internal Improvement Trust Fund, 595 So.2d 186 (Fla. 1st DCA 1992); Coalition of Mental Health Professions v. Dep't of Prof'l Regulation, 546 So.2d 27 (Fla. 1st DCA 1989).
[7] Article IX, section 7, states:

SECTION 7. State University System.
(a) PURPOSES. In order to achieve excellence through teaching students, advancing research and providing public service for the benefit of Florida's citizens, their communities and economies, the people hereby establish a system of governance for the state university system of Florida.
(b) STATE UNIVERSITY SYSTEM. There shall be a single state university system comprised of all public universities. A board of trustees shall administer each public university and a board of governors shall govern the state university system.
(c) LOCAL BOARDS OF TRUSTEES. Each local constituent university shall be administered by a board of trustees consisting of thirteen members dedicated to the purposes of the state university system. The board of governors shall establish the powers and duties of the boards of trustees. Each board of trustees shall consist of six citizen members appointed by the governor and five citizen members appointed by the board of governors. The appointed members shall be confirmed by the senate and serve staggered terms of five years as provided by law. The chair of the faculty senate, or the equivalent, and the president of the student body of the university shall also be members.
(d) STATEWIDE BOARD OF GOVERNORS. The board of governors shall be a body corporate consisting of seventeen members. The board shall operate, regulate, control, and be fully responsible for the management of the whole university system. These responsibilities shall include, but not be limited to, defining the distinctive mission of each constituent university and its articulation with free public schools and community colleges, ensuring the well-planned coordination and operation of the system, and avoiding wasteful duplication of facilities or programs. The board's management shall be subject to the powers of the legislature to appropriate for the expenditure of funds, and the board shall account for such expenditures as provided by law. The governor shall appoint to the board fourteen citizens dedicated to the purposes of the state university system. The appointed members shall be confirmed by the senate and serve staggered terms of seven years as provided by law. The commissioner of education, the chair of the advisory council of faculty senates, or the equivalent, and the president of the Florida student association, or the equivalent, shall also be members of the board.
[8] The Board of Regents was created by the Legislature and authorized by statute to adopt statewide rules to implement the duties conferred upon it by law. See §§ 240.205, 240.209, Fla. Stat. (2000).
[9] Those questions include the following:

Have the named Respondents disappeared, now replaced by a "Florida Board of Governors?" If so, why did the new entity not file a substitution of parties under Rule 9.360(c), Fla. R.App. P.? Under what authority did the new entity file the rules that are attached to the Suggestion [of Mootness]? Did the new entity file these rules with the Secretary of State, with the intent thereby of subjecting the rules to review under Chapter 120, Florida Statutes? Have the named Respondents' rules cease to exist? Have both named Respondents themselves now ceased to exist? What agency is now enforcing the rules under challenge here? If it is the "Florida Board of Governors," where is their staff and what is their budget? Under what specific authority do they operate, beyond the constitutional provision establishing the Statewide Board? What legislation has been enacted since the passage of the constitutional amendment in the fall of 2002 creating the Statewide Board to implement the amendment? What does the legislation say about the authority of this new entity to adopt rules or otherwise set educational policy for the state? What does the new entity itself say about such authority, and where is that statement published?
Petitioners' Response to "Respondents Notice Suggesting Mootness" at 6-7.