163 So.2d 753 (1964)
Frederick C. PETERS, Berenice Todd Peters, Frederick Todd Peters, Lewis W. Peters, Ferguson E. Peters, Plantation Development Company, a Florida corporation, and Old Plantation Corporation, a Florida corporation, Appellants,
v.
W. Herman MEEKS, Jr., as Tax Collector of Broward County, Florida, and Ray E. Green, as Comptroller of the State of Florida, Appellees.
No. 32788.
Supreme Court of Florida.
April 24, 1964.
Rehearing Denied May 26, 1964.
*754 Carl A. Hiaasen of McCune, Hiaasen, Crum & Ferris, Fort Lauderdale, for appellants.
Chancey & Chancey and Ross, Norman & Cory, Fort Lauderdale, for W. Herman Meeks, Jr., as Tax Collector of Broward County; John U. Lloyd, Fort Lauderdale, for Ray E. Green, as Comptroller of the State of Florida, appellees.
THOMAS, Justice.
In determining this dispute, appropriately described by the appellees as a "massive" attack on the 1961 tax roll of Broward County, we go first to the decree of the chancellor to ascertain what was decreed that vested jurisdiction in this court to review the case. We approve the description "massive" because of the prodigious amount of work reflected by the complaint and the original and reply briefs of the appellants totaling 108 pages in which appear 106 citations of decisions, 25 references to the State and Federal Constitutions, 40 references to Laws of Florida from 1927 on, 21 references to rules of procedure in Florida and 5 to Federal Rules, 11 references to texts and encyclopedias, and 2 quotations from Fortune Magazine, not to mention the complaint itself which with its exhibits numbered 91 pages. Although 28 Assignments of Error were filed in the Chancery Court, there was an effort at simplification here when the presentation was confined to but seven topics.
In the decree the chancellor held pointblank that Chapters 125, 127, 128, 129, 130, 131, 135, 137, 153, and Secs. 193.111, 193.25, 193.27, 193.28, 193.29, 193.30, 193.31, 193.32, 193.67, and 193.671, Florida Statutes, F.S.A., were constitutional thereby rejecting the appellants' contention that they were invalid because of the deletion at an election in 1944 of the clause in Sec. 5, Art. VIII, of the Constitution, F.S.A. before then existing: "The powers, duties and compensation of such county commissioners shall be prescribed by law."
The appellants represent that all questions presented in this case are ones of law and that "the suit was predicated almost exclusively on constitutional grounds." Following this it is stated in the brief that "the underlying basic constitutional premise stems from the fact that at the General Election in 1944" there was omitted from the Constitution the clause we have already quoted.
As we understand, then, the prime problem is whether county commissioners were stripped of any power that was vested in them by the sections of the statute we have listed, or to put it in the language of the appellants as it appears in their first `topic', *755 by the deletion of the quoted clause there was withdrawn from the legislature the authority to enact any laws investing the county commissions, all of them, of course, with power. Therefore, reason the appellants, all the acts subsequent to the effective date of the constitutional amendment undertaking to clothe them with power are of no effect and, to draw upon our recollection of the oral argument, such commissions could do little more than meet for a sort of social occasion, without compensation, no doubt.
The magnitude of the attack is further emphasized by the number of sections of the statutes involved, 222, dealing with a variety of subjects, from the eradication of cattle ticks and rattlesnakes to the equalization of taxes and the financing of county governments.
Considerable space in appellants' brief is devoted to the construction of constitutional language, giving due credit for the principles the framers had in mind, indulging their knowledge of the English language in expressing those principles, the considering in pari materia of all parts bearing upon a particular subject, attributing to every sentence some effect, affording to plain language the meaning expressed, and other rules oft-repeated and not now disavowed. With the hope we will not be charged with facetiousness, we observe that we cannot undertake to construe language that is not there.
But it is difficult for us to see how an excursion in such field, made familiar by the passage of time and repeated appearances in litigation here would aid in the resolution of the problem we are facing. It does not involve an interpretation of phraseology used. On the contrary, it concerns rather obliquely an intention to be gleaned from language left out or, perhaps more accurately, from the act of leaving it out. In other words, could it be logically said that when the clause was eliminated on readoption of the article, the people meant that county commissions were not thereafter to have power, perform duties, or receive compensation or, to put it otherwise, that the legislature could not afterward invest them with authority, impose upon them duties or pay them for services. They would then become a kind of vegetable official  nominated, elected and impotent.
We heartily reiterate the view that sovereignty resides in the people and that they may modify and change the constitution as they wish so long as they do not run afoul of the Federal Constitution.
We cannot ignore the effect from a practical standpoint of a ruling in favor of appellants. Aside from the chaos that would result from a decision in their favor causing the collapse of the government of every county in the State we are sure there is sound reason in law not to embrace the view.
We think the appellees have a ready reply to the challenge when they remind us that the State, as distinguished from the Federal, Constitution is a limitation of the power inherent in the people, or as it was specified in Sun Insurance Office, Limited v. Clay, Fla., 133 So.2d 735, "[S]tate constitutions * * * are limitations upon the power of the state legislature." A further pronouncement in that case sheds light on our problem, "It is a fundamental principle of constitutional law that each department of government * * has, without any express grant, the inherent right to accomplish all objects naturally within the orbit of that department * * *." Pertinent to these comments we refer to Sec. 5, Art. IX of the Constitution expressly providing for authority on the part of the legislature to empower the counties to assess and impose taxes for county purposes and enjoining them to do so on the principles governing State taxation.
The whole method of securing tax money to finance operation of the counties *756 from the time the amount needed is fixed until the equalization and settlement of challenges of individual owners is vicariously or directly under supervision and control of the county commissioners. And afterward the expenditure of the money gathered for myriads of county purposes is directed by the Boards of County Commissioners. It would, in our view, be unrealistic and illogical to hold that the county commissioners were but holders of a naked title to office simply because of the omission of the quoted portion of the original Sec. 5, Art. VIII. And we believe we can adopt that attitude without any violence to the remainder of the Constitution or any of the rules by which it is to be construed.
In their second "topic" the appellants complain strenuously about a violation of the rights secured to them under the due process and equal protection clauses of the State and Federal Constitutions by reason of the manner in which the board of county commissioners conducted its business when sitting as a board of equalization especially as notice to appellants was concerned.
It seems that the county commissioners convened as an equalization board 2 August 1961 after having adjourned the last day of the preceding month. Appellants' complaint dated 31 July was considered 8 August and denied inasmuch as they did not appear and support it. Even so, another complaint was filed 11 August. There followed a colloquy over the telephone between a deputy clerk and counsel for the appellants, the former stating that if the latter wished to be heard, he would have to appear that afternoon as the board was striving to complete its work that day and would continue the following day only if the consideration of complaints had not been concluded. Counsel for the appellants insisted that his own schedule would not permit his appearance before the following week; that he, the attorney, had reserved one of three days the next week and "they [the board] can wait until that time." Thereupon the deputy clerk repeated that the board would not then be in session and the attorney retorted: "They will have to take the consequences because they have not given me any hearing." In the transcript this conversation ended with the notation: "Receiver: Slam!!!!!"
In sum, we have not found in the record support for the second `topic' which is a challenge of the constitutionality of Sec. 193.25 which appellants contend is invalid on its face because, at least as applied to them, presumably in the circumstances related, it violates the "Due Process of Law Clause and the Equal Protection of the Laws Clause of the State and Federal Constitutions."
In the introduction of the third `topic' the appellants tell us that if either of the first two is decided in their favor, the remaining five need not be discussed. Since we have decided the first two in favor of the appellees, we proceed to the third which is a blanket assertion that all proceedings of the Board of Equalization were null and void. The main criticism is directed to the manner in which notice of the hearings was given. In Sec. 193.25, supra, it is provided that notice of the meeting of such a board shall be given by publication in a newspaper at least 15 days before the board will be in session. So, insist the appellants in the instant matter, there was no compliance with the requirement inasmuch as the notice was published 19 July 1961 of a session or hearing scheduled for 2 August. True, counting the last day and not the first but 14 days' notice was given. But the point may not be so easily decided.
The statute provides that the assessors shall meet with the Board of County Commissioners the first Monday in July which in the year 1961 was the third day.
Without pausing to discuss the right of the Board to adjourn from 3 July to 2 August and despite the apparent failure to *757 give full 15 days' notice of the later meeting, it is plain that the appellants' counsel knew of the meeting because he filed a complaint 31 July. And he still knew of the session 11 August for he then filed a second complaint.
Moreover, he was given an opportunity to be heard orally but he declined for a reason we consider unsound, namely that it would interfere with his personal schedule. In these circumstances we think he is in no position to charge that all the proceedings were invalid and that upon failure of the board to stay in session until the following week as a convenience to him he was deprived of an opportunity to present his client's objection to the assessment.
In presenting the fourth `topic' the appellants insist that Sec. 193.11(3) was disregarded in the preparation of the 1961 tax roll due to decisions of the Circuit Court and of the District Court of Appeal, Second District, which had held the act unconstitutional, decisions subsequently overruled by the Supreme Court. Tyson et al. v. Lanier, et al. Fla., 156 So.2d 833.
We have not found in the record any indication that the chancellor disregarded the section and we think the deduction that such was the case is not justified. He did not even mention it. The appellants point to a sentence in the contract of an appraiser supporting their view. All said there relevant to the point was that agricultural lands would be appraised "in conformity with law." The inference that because the section was not mentioned, it was ignored is too far-fetched. Moreover, the appellees flatly deny that there was any evidence whatever to show what lands of the appellants were in bona fide use for agricultural purposes.
It is true that in their reply brief the appellants assert that "only the * * * fringe of [their] lands could be used for urban purposes" and "the rest could be used only for farming and pasturing." They say also that "farming took place and herds of cattle actually grazed on the remainder of the land." We are not told where in the record of several hundred pages such testimony may be found and we are not disposed to turn each page in search of it.
We conclude our discussion of this `topic' with the comment that the point is so nebulous that the decree should not be disturbed on this ground.
Next, in `topic' five, is the challenge of that part of the decree holding that the suit could not be maintained as a "class suit." In the complaint are two allegations which give rise to this problem (1) "In the preparation and certification of said 1961 tax assessment roll, like property similarly situated (even adjoining property) did not receive like treatment as to valuation" and (2) "Agreeable to Rule 3.6, plaintiffs bring this suit on their own behalf and on behalf of other persons similarly situated."
We think this allegation, though it tracks the wording of the statute, is too broad. As we understand the complaint, it was directed at all property, urban and rural, some of each of which the appellants owned. This was emphasized in their reply brief when they said "Every question which we have urged in this case has affected every taxpayer in Broward County, Florida. We said in City of Lakeland v. Chase National Company, 159 Fla. 783, 32 So.2d 833:
"`* * * An allegation that the plaintiff brought suit on his own behalf and in behalf of all others similarly situated does not, of itself, determine the character of the proceeding as a class suit, and does not establish such community of interest as would enable the plaintiff to represent the other persons interested in the subject matter. * * *'" and
"In class suits it is important to plead and describe the class with certainty whether the class be plaintiffs or defendants and if they are considered so *758 numerous as to make it impractical to bring them before the court it too should be plead and proved with a fair degree of certainty. More is required than the mere pleading the language of the statute."
We discover no error in the ruling of the court challenged in the fifth `topic'.
We conclude with brief consideration of `topic' six setting out the complaint about the chancellor's action in trying the case piecemeal on two days in April 1963, beginning 22 April, and, a few days later, depriving appellants of their right to offer evidence. It is recited in the final decree that on the first day "all parties agreed, in open court, that the Notice of Hearing on said Motions for Summary Decree was proper, and that any deficiency in the time allowed for such hearing was expressly waived. The Court heard argument of counsel for all parties on their respective Motions for Summary Decree * * *." Patently the chancellor once he began hearing the case after a notice counsel for all parties agreed was proper had the right to proceed to final conclusion. It further appears in the decree that "all parties stipulated and agreed, in open court * * that as to the issues of law presented in plaintiffs' Motion for Summary Final Decree [we might add, filed by the appellants themselves] there was no dispute as to any material matters of fact, and that the court could adjudicate the issues therein as matters of law."
Hence there appears to be no merit in this `topic' which is the last, of seven, we will discuss. The seventh does not require discussion or decision. It is denominated "Miscellaneous" and is a challenge of the "whole trial procedural technique employed by the Chancellor." The presentation of it amounts to nothing more than a reference to eight assignments of error which are "submitted on the contents of each as reflected by the record." This is an allotment to us of a task we do not feel obliged to undertake.
The decree of the chancellor is affirmed.
DREW, C.J., ROBERTS, THORNAL, O'CONNELL and CALDWELL, JJ., and FITZPATRICK, Circuit Judge, concur.