876 So.2d 636 (2004)
NAACP, INC., through its Florida Conference of Branches of NAACP; Mattie Garvin, on her own behalf and as mother of Keith Garvin; and Keith Garvin, Appellants/Cross-Appellees,
v.
FLORIDA BOARD OF REGENTS and State Board of Education, Appellees/Cross-Appellants.
No. 1D00-3138.
District Court of Appeal of Florida, First District.
June 18, 2004.
*637 Daniel H. Thompson and Melanie Ann Hines of Berger Singerman, Tallahassee; Mitchell W. Berger, of Berger Singerman, Fort Lauderdale, for Appellants/Cross-Appellees.
Daniel Woodring, General Counsel; Nathan A. Adams, IV, Deputy General Counsel; Jason K. Fudge, Assistant General Counsel, Tallahassee, for Appellees/Cross-Appellants.
WEBSTER, J.
This is the second time this dispute has been before us. The first time, we held that appellants/cross-appellees lacked standing to prosecute this administrative rule challenge and, accordingly, dismissed on that basis. NAACP, Inc. v. Florida Bd. of Regents, 822 So.2d 1 (Fla. 1st DCA 2002). However, we also certified to the supreme court a question that we believed to be of great public importance. Id. at 14 (on rehearing). A majority of the supreme court concluded that appellants did, in fact, have standing, and remanded to us for further proceedings. NAACP, Inc. v. Florida Bd. of Regents, 863 So.2d 294 (Fla.2003). Three justices dissented, stating that they would remand to us "for consideration of the issue of whether this case [had become] moot" in light of significant intervening changes in the entities responsible for operating the state university system. Id. at 301 (Wells, J., dissenting). Although the majority reached the merits, they stated in a footnote that their decision was not to be construed as precluding consideration of the mootness issue on remand. Id. at 295 n. 1. Following remand to us, because it appeared that the case had become moot, we issued an order directing appellants to show cause why it had not. Having now carefully considered the briefs filed by the parties, we conclude that the case is moot and, accordingly, dismiss the appeal and cross-appeal for that reason.
Appellants challenge a number of rule amendments adopted by the Florida Board of Regents in February 2000. Their principal contention has been (and remains) that the rules constitute "an invalid exercise of delegated legislative authority" (as that term is defined in the Florida Administrative Procedure Act) because there is no specific statutory authority authorizing the Board of Regents to prohibit consideration of factors that a university might deem relevant in the admissions process, such as race, national origin, or gender. See Southwest Fla. Water Mgmt. Dist. v. Save the Manatee Club, Inc., 773 So.2d 594 (Fla. 1st DCA 2000) (explaining the test to be applied to determine whether agency rulemaking constitutes "an invalid exercise of delegated legislative authority" as that term is defined in section 120.52(8), Florida Statutes (1999)). Because we concluded that appellants lacked standing to prosecute the rule challenge, we dismissed *638 without addressing the merits of their argument.
When appellants commenced their rule challenge, the Board of Regents was a legislatively created "body corporate," given responsibility by the legislature for adopting rules pursuant to the Florida Administrative Procedure Act applicable to the entire State University System "to implement provisions of law conferring duties on [that System]"; and for "planning for the future needs of the State University System; planning the programmatic, financial, and physical development of the system; reviewing and evaluating the instructional, research, and service programs at the universities; coordinating program development among the universities; and monitoring the fiscal performance of the universities." §§ 240.205, 240.209(1), Fla. Stat. (1999). Although its composition has changed, the State Board of Education was (and remains) a constitutionally created "body corporate," "hav [ing] such supervision of the system of free public education as is provided by law." Art. IX, § 2, Fla. Const. When the rule challenge was commenced, the State Board of Education was legislatively charged with "general supervision and control over the Board of Regents." § 240.203(2), Fla. Stat. (1999).
The Board of Regents was legislatively abolished as of July 1, 2001, and its powers transferred to a new entity known as the "Florida Board of Education." §§ 229.003(5)(a) & (b), 229.004(1)(a), Fla. Stat. (2001). In 2002, the legislature adopted a law abolishing the Florida Board of Education effective as of January 7, 2003, vesting that entity's powers in the State Board of Education. Ch.2002-387, §§ 19-21, 1058, 1065, at 3172-80, 4152-53, Laws of Fla.
However, in November 2002, Florida voters approved an amendment to article IX of the Florida Constitution which provides:
SECTION 7. State University System. 
(a) PURPOSES. In order to achieve excellence through teaching students, advancing research and providing public service for the benefit of Florida's citizens, their communities and economies, the people hereby establish a system of governance for the state university system of Florida.

(b) STATE UNIVERSITY SYSTEM. There shall be a single state university system comprised of all public universities. A board of trustees shall administer each public university and a board of governors shall govern the state university system.

(c) LOCAL BOARDS OF TRUSTEES. Each local constituent university shall be administered by a board of trustees consisting of thirteen members dedicated to the purposes of the state university system. The board of governors shall establish the powers and duties of the boards of trustees. Each board of trustees shall consist of six citizen members appointed by the governor and five citizen members appointed by the board of governors. The appointed members shall be confirmed by the senate and serve staggered terms of five years as provided by law. The chair of the faculty senate, or the equivalent, and the president of the student body of the university shall also be members.
(d) STATEWIDE BOARD OF GOVERNORS. The board of governors shall be a body corporate consisting of seventeen members. The board shall operate, regulate, control, and be fully responsible for the management of the whole university system. These responsibilities shall include, but not be limited *639 to, defining the distinctive mission of each constituent university and its articulation with free public schools and community colleges, ensuring the well-planned coordination and operation of the system, and avoiding wasteful duplication of facilities or programs. The board's management shall be subject to the powers of the legislature to appropriate for the expenditure of funds, and the board shall account for such expenditures as provided by law. The governor shall appoint to the board fourteen citizens dedicated to the purposes of the state university system. The appointed members shall be confirmed by the senate and serve staggered terms of seven years as provided by law. The commissioner of education, the chair of the advisory council of faculty senates, or the equivalent, and the president of the Florida student association, or the equivalent, shall also be members of the board.
(Emphasis added.) The Board of Governors created by this amendment came into existence on January 7, 2003. Art. XI, § 5(d), Fla. Const. On that date, the Board of Governors met for the first time, and adopted all of the rules challenged by appellants.
Appellees contend that appellants' rule challenge is now moot because the challenged rules have been adopted by the Board of Governors, exercising its power pursuant to article IX, section 7, of the Florida Constitution, and, therefore, are not subject to challenge under the Florida Administrative Procedure Act. We agree.
Article IX, section 7(d), states that the Board of Governors "shall operate, regulate, control, and be fully responsible for the management of the whole university system." Appellees argue that such a broad grant of authority clearly includes control over admissions policies which are essential to the management and operation of the university system. We conclude that such a construction is consistent with the provision's explicit language and the intent of the framers and voters. See Caribbean Conservation Corp. v. Fla. Fish & Wildlife Conservation Comm'n, 838 So.2d 492, 501 (Fla.2003) (holding that interpretation of a constitutional provision begins with examination of the provision's explicit language, and that a court must endeavor to construe the provision in a manner consistent with the intent of the framers and voters).
Appellees argue, further, that, with the exception of two sentences regarding the terms of members appointed to the local boards of trustees and the Board of Governors, article IX, section 7, appears to be "self-executing insofar as it bestows specific powers on the Board of Governors that may be exercised without statutory assistance." "The basic guide, or test, in determining whether a constitutional provision should be construed to be self-executing, or not self-executing, is whether or not the provision lays down a sufficient rule by means of which the right or purpose which it gives or is intended to accomplish may be determined, enjoyed, or protected without the aid of legislative enactment." Gray v. Bryant, 125 So.2d 846, 851 (Fla.1960). There is a presumption that constitutional provisions are intended to be self-executing "because in the absence of such presumption the legislature would have the power to nullify the will of the people expressed in their constitution, the most sacrosanct of all expressions of the people." Id. Based on these principles, we conclude that article IX, section 7, is self-executing by its own terms insofar as it empowers the Board of Governors to "operate, regulate, control, and be fully responsible for the management of the whole university system." The plain language *640 of the provision clearly contemplates that the Board of Governors' exercise of its powers is subject only to the legislature's authority to appropriate funds, to confirm the Board's appointed members, and to set members' staggered terms.
In short, the Board of Governors' power to adopt rules regarding university admissions flows directly from the Florida Constitution. This distinguishes the Board of Governors from the Florida Board of Regents, which was created, empowered, and eventually abolished by the Florida Legislature. §§ 240.205 & 240.209, Fla. Stat. (1979); §§ 229.003(6)(a) & 240.209, Fla. Stat. (2000); § 229.003(5)(a), Fla. Stat. (2001). This also distinguishes the Board of Governors from the State Board of Education which, under article IX, section 2, of the Florida Constitution, has "such supervision of the system of free public education as is provided by law." Because the Board of Governors' constitutional authority to promulgate the challenged rules is not dependent on any delegation from the Florida Legislature, those rules cannot be challenged under the Administrative Procedure Act. See In re Advisory Opinion of the Governor, 334 So.2d 561, 562 (Fla.1976) (stating that the Administrative Procedure Act does not apply to powers of the governor "`derived' solely from the Constitution," as opposed to "legislative enactment"); Phillips v. Board of Pardons, 487 So.2d 1154, 1155 (Fla. 1st DCA 1986) (stating that, because "the power of sentence commutation is clearly of constitutional origin[,] ... the exercise thereof is not subject to the Administrative Procedures [sic] Act"). Cf. Caribbean Conservation Corp. v. Fla. Fish & Wildlife Conservation Comm'n, 838 So.2d 492, 501 (Fla.2003) (indicating that, to determine whether the legislature can require a constitutionally created entity to comply with the Administrative Procedure Act, a court must first determine the extent of the power granted to the entity by the constitution).
Appellants maintain that such an interpretation of the Board of Governors' rulemaking authority under article IX, section 7, "would require this Court to find that the authority of the Legislature and the authority of the constitutionally created, legislatively empowered State Board of Education has been eviscerated by the newly created Board of Governors." As appellees correctly point out, this is simply not true. Article IX, section 7, clearly contemplates a significant role in the management of the state university system for the legislature, through its power over appropriations. Moreover, although authority over the university system has been transferred by article IX, section 7, to the Board of Governors, the authority of the State Board of Education under article IX, section 2, has not been "eviscerated" insofar as the State Board of Education remains responsible for K-12 and community college education. To the extent that statutes remain on the books bestowing authority on the State Board of Education (or individual university boards of trustees) in matters relating to the management of the state university system, we agree with appellees that those statutes have been implicitly repealed by the subsequent adoption of article IX, section 7. See Florida Pub. Employees Council 79, AFSCME, AFL-CIO v. Pub. Employees Relations Comm'n, 871 So.2d 270, 271 (Fla. 1st DCA 2004) (Webster, J., concurring in part and dissenting in part).
Appellants claim that, even if the State Board of Education no longer has rulemaking authority over the state university system, their rule challenge is not moot because the State Board's rules relating to the state university system have not been repealed by the State Board and *641 can still be found in the Florida Administrative Code as rules of the Board of Regents. Moreover, appellants assert that there are indications that the State Board is continuing to implement these rules. Even if this is true, appellants' claim is still moot. "A case becomes moot, for purposes of appeal, where, by a change of circumstances prior to the appellate decision, an intervening event makes it impossible for the court to grant a party any effectual relief." Montgomery v. Dep't of Health and Rehab. Servs., 468 So.2d 1014, 1016 (Fla. 1st DCA 1985). The adoption of article IX, section 7, of the Florida Constitution and the Board of Governors' subsequent adoption of the challenged rules have made it impossible for this court to grant effectual relief to appellants. If appellants were allowed to proceed with their challenge to the State Board's rules and were successful, the fact remains that the same rules have been adopted by the Board of Governors and would remain in effect.
Because the intervening adoption of article IX, section 7, of the Florida Constitution and the Board of Governors' adoption of the challenged rules pursuant to the authority granted to it by that amendment have made it impossible for this court to grant effectual relief to appellants, the appeal and cross-appeal are dismissed as moot.
BROWNING and POLSTON, JJ., CONCUR.