927 So.2d 139 (2006)
NOTAMI HOSPITAL OF FLORIDA, INC., d/b/a Lake City Medical Center, Petitioner,
v.
Evelyn BOWEN and Don Bowen, her husband, John C. Nicely, as Personal Representative of the Estate of Christine Nicely, Pendrak Surgical Group, P.A., and Robert B. Pendrak, M.D., Respondents.
No. 1D05-4149.
District Court of Appeal of Florida, First District.
April 21, 2006.
*141 Stephen Bronis and Steven Wisotsky of Zuckerman Spaeder LLP, Miami, & Charles Shad of Saalfield, Shad, Jay, Lucas & Stokes, P.A., Jacksonville, for Petitioner.
Jerome Hoffman of Holland & Knight, Tallahassee & Michael Tanner of Holland & Knight, Jacksonville, as Amici Curiae for Petitioner.
Lisa Shearer Nelson of Holtzman Equels, Tallahassee, for Respondents.
Lincoln Connolly of Rossman, Baumberger, Reboso & Spier, P.A., Miami, & Philip Burlington, of Burlington & Rockenbach, P.A., West Palm Beach, as Amici Curiae for Respondents.
HAWKES, J.
The trial court ruled Amendment 7, codified as article X, section 25, of the Florida Constitution, is self-executing, and section 381.028, Florida Statutes (2005), enacted to implement article X, section 25, is unconstitutional. As a consequence, the trial court ruled Respondents could access previously confidential peer review, risk management, and credentialing documents. Petitioner, Notami Hospital of Florida, Inc., d/b/a Lake City Medical Center, petitions this court for a writ of certiorari, arguing the trial court's rulings depart from the essential requirements of law. We disagree and deny the petition.

Factual Background
The Hospital is a defendant in three medical malpractice actions pending in the *142 trial court, which were consolidated for discovery. Each suit alleged Dr. Robert Pendrak performed negligent surgery, resulting in injury or death to Respondents or Respondents' decedent. The Hospital was alleged to be negligent in credentialing, retaining or supervising Dr. Pendrak, in violation of section 766.110, Florida Statutes.
Respondents served the Hospital with a Notice of Taking Videotape Deposition Duces Tecum of Gary Karsner, the Hospital's CEO. The Notice was mailed prior to the passage of Amendment 7, and sought production of "[a]ll files, papers, and computer records relating to the selection, retention, or termination of Robert B. Pendrak, M.D. at [the Hospital]." The Hospital moved for a protective order as to the credentialing file and related documents, invoking risk management, peer review and statutory privileges, and filed a privilege log pursuant to Fla. R. Civ. P. 1.280(b)(5).
Karsner's deposition was held the day after Amendment 7 passed. Karsner was asked questions regarding the investigation by Karsner or his staff into Dr. Pendrak's background. The Hospital's counsel instructed Karsner not to answer, because the information was confidential as having come from the Credentials Committee, Risk Management Committee, Peer Review Committee, Medical Review Committee, or Quality Assurance Committee. Consequently, Karsner testified he could not answer.
Respondents filed a motion to compel production of documents and answers to deposition questions, asserting Amendment 7 applied to the information sought from Karsner. Respondents subsequently filed two additional motions to compel deposition testimony and production of documents, and a request to determine the applicability of Amendment 7. These motions broadened the previous request to "any records made or received in the course of business by [the Hospital] relating to any adverse medical incident involving Dr. Pendrak."
Following a motion hearing, the trial court concluded: (1) section 381.028 restricted rights granted under the Florida Constitution and, consequently, was unconstitutional; (2) Amendment 7 is not unconstitutionally retrospective because there is no vested right in maintaining confidentiality of adverse medical incidents; and (3) Amendment 7 is self-executing and prospective in operation, but retrospective as to extant records. We agree with each conclusion, and discuss them in turn.

Section 381.028, Florida Statutes Restricts Constitutional Rights
State constitutions are limitations upon the power of state legislatures. See Peters v. Meeks, 163 So.2d 753, 755 (Fla.1964). Consequently, a statute enacted by the Legislature may not restrict a right granted under the Constitution. See Austin v. Christian, 310 So.2d 289, 293 (Fla.1975). To the extent a statute conflicts with express or clearly implied mandates of the Constitution, the statute must fall. See Holley v. Adams, 238 So.2d 401, 405 (Fla.1970); In re Advisory Opinion to the Atty. Gen., Limitation of Non-Economic Damages in Civil Actions, 520 So.2d 284, 287 (Fla.1988) (noting statutes "which are inconsistent with the Constitution, if it is amended, will simply have to give way"); Henderson v. State, 155 Fla. 487, 491, 20 So.2d 649, 651 (Fla.1945) (noting "when the provisions of a statute collide with provisions of the Constitution the statute must give way."); State ex rel. Curley v. McGeachy, 149 Fla. 633, 642, 6 So.2d 823, 827 (Fla.1942) (en banc) (noting provisions of Constitution will prevail over statutes where there is conflict).
*143 Section 381.028, Florida Statutes, purports to implement Amendment 7. However, a comparison of the plain language of the "implementing" statute and article X, section 25, reveals the statute drastically limits or eliminates discovery of records the amendment expressly states are discoverable, and limits the "patients" qualified to access those records. Four examples illustrate how section 381.028 restricts constitutional rights.
First, article X, section 25(a), provides patients have a right to access "any records. . . relating to any adverse medical incident," and article X, section 25(c)(3), broadly defines "adverse medical incident" as "including, but not limited to" records resulting from "incidents that are reported to or reviewed by any health care facility peer review, risk management, quality assurance, credentials, or similar committee, or any representative of any such committee." Conversely, section 381.028(3)(j), Florida Statutes, limits records produced to only a "final report."
Second, article X, section 25(c)(2), provides that patients, actual, prospective, or previous, are entitled to those records. Section 381.028(7), Florida Statutes, limits disclosure to only the final report relating to the same or a substantially similar condition, treatment or diagnosis with that of the patient requesting record access.
Third, article X, section 25(a), contains no limitation on the time frame within which the records were generated, while section 381.028(5), Florida Statutes, limits production to only those records generated after November 2, 2004.
Fourth, section 381.028(6), provides that Amendment 7 will have no effect on existing privilege statutes. This is contrary to the stated purpose of the amendment, and the Florida Supreme Court discussion in its opinion authorizing Amendment 7's placement on the ballot.[1] Clearly, the statute impermissibly restricts rights expressly granted under the Constitution.
The Hospital's argument that these statutory limitations are necessary to prevent an unconstitutional retrospective application of the amendment, resulting in a destruction of their vested, substantive rights, is without merit.

No Vested, Substantive Right to Confidentiality of Adverse Medical Incidents

"A statute[2] is not unconstitutionally retrospective in its operation unless it impairs a substantive, vested right." Clausell v. Hobart Corp., 515 So.2d 1275, 1276 (Fla.1987). However, "[t]o be vested a right must be more than a mere expectation based on an anticipation of the continuance of an existing law. . . ." Id. (quoting Div. of Workers' Comp. v. Brevda, 420 So.2d 887, 891 (Fla. 1st DCA 1982)) (emphasis added). Here, the Hospital does not have a vested right in maintaining the confidentiality of adverse medical incidents. The Hospital's "right" is no more than an expectation that previously existing *144 statutory law would not change. Because the Hospital's expectation is not a vested, substantive right, applying Amendment 7 to records created prior to its passage is not unconstitutionally retrospective.

Amendment 7 is Self-Executing
Constitutional provisions are presumed to be self-executing. See Gray v. Bryant, 125 So.2d 846 (Fla.1960); NAACP, Inc. v. Fla. Bd. of Regents, 876 So.2d 636 (Fla. 1st DCA 2004). "This is so because in the absence of such presumption the legislature would have the power to nullify the will of the people expressed in their constitution, the most sacrosanct of all expressions of the people." Gray, 125 So.2d at 851; NAACP, Inc., 876 So.2d at 639.
The test to determine whether a constitutional provision is self-executing is whether it provides a sufficient rule by which the right or purpose it gives or is intended to accomplish may be determined or protected without legislative enactment. See Gray, 125 So.2d at 851; NAACP, Inc., 876 So.2d at 639. "If the provision lays down a sufficient rule, it speaks for the entire people and is self-executing." Gray, 125 So.2d at 851; NAACP, Inc., 876 So.2d at 639. "The fact that the right granted by the provision may be supplemented by legislation, further protecting the right or making it available, does not of itself prevent the provision from being self-executing." Gray, 125 So.2d at 851; NAACP, Inc., 876 So.2d at 639.
In Gray, the Florida Supreme Court held the following constitutional amendment, which prescribed the formula by which the number of circuit judges in each of the sixteen judicial circuits was to be determined, was self-executing. See Gray, 125 So.2d at 850. That language read:
The legislature shall provide for one circuit judge in each circuit for each fifty thousand inhabitants or major fraction thereof according to the last census authorized by law. In circuits having more than one judge the legislature may designate the place of residence of any such additional judge or judges.
Id. at 849-850. The language in Amendment 7 is much more specific. It defines, in detail, what records are discoverable, who is entitled to discovery, and states it is effective on the date it is approved by the voters.[3] If the broadly worded constitutional amendment in Gray was determined to be self-executing, the much more specific language in Amendment 7 easily passes that test.

Amendment 7 is Intended to be Prospective In Operation and Retrospective as to Extant Records
When determining whether Amendment 7 should be retroactively applied, we must determine whether there is clear evidence the electorate intended it to be applied retroactively.[4]See Campus Commc'ns, Inc. v. Earnhardt, 821 So.2d 388, 395 (Fla. 5th DCA 2002). Intent is determined primarily from the language of the amendment, and when the language is clear, unambiguous and conveys a clear and definite meaning, the amendment must be given its plain and obvious meaning. See id. (citing Holly v. Auld, 450, So.2d 217, 219 (Fla.1984)).
*145 Here, the plain language of the amendment permits patients to access any record relating to any adverse medical incident, and defines "patient" to include individuals who had previously undergone treatment. The use of the word "any" to define the scope of discoverable records relating to adverse medical incidents, and the broad definition of "patient" to include those who "previously" received treatment expresses a clear intent that the records subject to disclosure include those created prior to the effective date of the amendment. The effective date merely sets forth the date patients obtained the right to receive the records requested. Because the plain language of the amendment expresses a clear intent that it be applied to include records created prior to its effective date, doing so is not an unconstitutional retroactive application.

Conclusion
Because section 381.028, restricts express constitutional rights, it must fall. The trial court did not depart from the essential requirements of law by concluding the statute is unconstitutional. Similarly, because Amendment 7 provides a sufficient rule by which patients can access records of adverse medical incidents, without the need for legislative enactment, the trial court did not depart from the essential requirements of law by concluding the amendment is self-executing, and by giving it retroactive application. Because our conclusion that the amendment has retroactive application to records created prior to its effective date directly conflicts with the holding in Fla. Hosp. Waterman, Inc. v. Buster, 31 Fla. L. Weekly D763, ___ So.2d ___, 2006 WL 566084 (Fla. 5th DCA March 10, 2006), we certify conflict.
Certiorari is DENIED.
PADOVANO, J., concurs; ERVIN, J., concurs in part and dissents in part with opinion.
ERVIN, J., concurring and dissenting.
I concur with all issues addressed in the majority's opinion except that relating to the retroactive application of Amendment 7, from which I dissent. Similar to the Fifth District in Florida Hospital Waterman, Inc. v. Buster, 31 Fla. L. Weekly D763, ___ So.2d ___, 2006 WL 566084 (Fla. 5th DCA March 10, 2006), I have found nothing in the language of the amendment manifesting an intent that it be applied retroactively. I would therefore grant the petition for writ of certiorari only as to this issue.
NOTES
[1] The Supreme Court noted, "[a]lthough the amendment may affect several different statutes, the amendment has but one purpose  providing access to records on adverse medical incidents . . ." In re Advisory Opinion to the Atty. Gen. re Patients' Right To Know About Adverse Medical Incidents, 880 So.2d 617, 618-619 (2004). "Unquestionably, the amendment would affect sections 395.0193(8) and 766.101(5), of the Florida Statutes (2003), which currently exempt the records of investigations, proceedings, and records of the peer review panel from discovery in a civil or administrative action. Indeed, this is a primary purpose of the amendment." Id. at 620-621.
[2] Although the case law addresses retrospective application of statutes, logic suggests the same reasoning would apply in a constitutional context.
[3] See note B, art. X, § 25, Fla. Const.
[4] Although the case law addresses statutory language, again, logic suggests the same reasoning would apply in a constitutional context.