# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

No. 1D18-4471
_____

FLORIDA DEPARTMENT OF
HEALTH, OFFICE OF MEDICAL
MARIJUANA USE, COURTNEY
COPPOLA, in her official capacity
as Director of the Office of
Medical Marijuana Use,
CELESTE PHILIP, M.D., M.P.H.,
in her official capacity as State
Surgeon General and Secretary
of the Florida Department of
Health, and THE STATE OF
FLORIDA,

    Appellants,

    v.

FLORIGROWN, LLC, a Florida
limited liability company and
VOICE OF FREEDOM, INC., d/b/a
Florigrown,

    Appellees.

_____

On appeal from the Circuit Court for Leon County.
Charles W. Dodson, Judge.

July 9, 2019

PER CURIAM.

The Department of Health (Department) challenges the trial court's entry of a temporary injunction which:

> (1) immediately enjoin[ed] the Department of Health from registering or licensing any [Medical Marijuana Treatment Centers] pursuant to the unconstitutional legislative scheme set forth in Section 381.986, Florida Statutes, (2) requir[ed] the Department by 5:00 PM Friday, October 19, 2018 to commence registering MMTCs in accordance with the plain language of the Medical Marijuana Amendment, and (3) requir[ed] the Department to register F1origrown as an MMTC by 5:00 PM Friday, October 19, 2018, unless the Department c[ould] clearly demonstrate [] that such registration would result in unsafe use of medical marijuana by qualifying patients.

We determine that certain aspects of the injunction are overbroad and unsupported by the evidence and factual findings. We, however, uphold the injunction to the extent it requires the Department to consider Florigrown's request for licensure without applying the portions of the statutory scheme which this opinion identifies as being unconstitutional.

PROCEDURAL HISTORY

In 2016, voters amended the Florida Constitution to protect the production, possession, and use of medical marijuana. Art. X, § 29, Fla. Const. The amendment went into effect on January 3, 2017, and states, in relevant part:

> (b)(5) "Medical Marijuana Treatment Center" (MMTC) means an entity that acquires, cultivates, possesses, processes (including development of related products such as food, tinctures, aerosols, oils, or ointments), transfers, transports, sells, distributes, dispenses, or administers marijuana, products containing marijuana, related supplies, or educational materials to qualifying patients or their caregivers and is registered by the Department.

2

. . . .

(d) The Department shall issue reasonable regulations necessary for the implementation and enforcement of this section. The purpose of the regulations is to ensure the availability and safe use of medical marijuana by qualifying patients. It is the duty of the Department to promulgate regulations in a timely fashion.

(1) Implementing Regulations. In order to allow the Department sufficient time after passage of this section, the following regulations shall be promulgated no later than six (6) months after the effective date of this section:

. . . .

(3) If the Department does not issue regulations, or if the Department does not begin issuing identification cards and registering MMTCs within the time limits set in this section, any Florida citizen shall have standing to seek judicial relief to compel compliance with the Department's constitutional duties.

Art. X, § 29(b)(5) and (d)(1), (3), Fla. Const.

Two weeks after the amendment went into effect, appellee sent the Department a letter seeking to register as an MMTC. The Department denied the request because it had not yet promulgated any regulations pursuant to the amendment.

In June 2017, the Legislature passed a bill later signed by the governor amending section 381.986, Florida Statutes, which set forth a statutory framework for the registration of MMTCs by:

- Directing the Department to convert the existing licenses of low-THC and medical cannabis dispensing organizations into MMTC licenses so long as the organizations still maintained all of the criteria set forth in section 381.986(8)(a)1., Florida Statutes.

- Providing for ten additional MMTC licenses for applicants that were (1) previously denied a

3

dispensing organization license under the prior version of section 381.986 so long as the organization had a pending a judicial or administrative challenge pending as of January 1, 2017, or had a final ranking within one point of the highest final ranking in its region; (2) in compliance with the requirements of the amended statute; and (3) able to provide the Department with documentation that they could begin cultivating marijuana within 30 days of registration as an MMTC. *See* § 381.986(8)(a)2., Fla. Stat.

• Stating that a licensed medical marijuana treatment center shall cultivate, process, transport, and dispense marijuana for medical use. *See* § 381.986(8)(e), Fla. Stat.

• Requiring the Department to adopt rules to establish a procedure for issuing MMTC licenses in accordance with the amended statute. *See* § 381.986(8)(b), Fla. Stat.

In December 2017, appellee filed suit requesting a declaratory judgment and a permanent injunction declaring these provisions unconstitutional and mandating the Department register appellee as an MMTC.

During this suit, appellee filed a motion for a temporary injunction. The trial court initially denied appellee's motion without prejudice despite finding that appellee had a substantial likelihood of success on the merits, because it found that appellee could not prove irreparable harm or that a temporary injunction would be in the public's best interests.

Three months later, appellee filed a renewed motion for a temporary injunction. The trial court granted this motion, finding that the Department's unwillingness to draft rules for registering MMTCs in accordance with the plain language of the amendment in the three months since it denied appellee's original motion for a temporary injunction required a different result and incorporating the findings of its earlier order.

4

STANDARD OF REVIEW

We review a trial court's order on a request for temporary injunction in a hybrid format: "The court's factual findings are reviewed for an abuse of discretion, whereas its legal conclusions are reviewed de novo." *State, Dep't of Health v. Bayfront HMA Med. Ctr., LLC*, 236 So. 3d 466, 471 (Fla. 1st DCA 2018) (citing *Gainesville Woman Care, LLC v. State*, 210 So. 3d 1243, 1258 (Fla. 2017)).

ANALYSIS

To obtain a temporary injunction, a party must provide specific facts establishing four elements: "(1) a substantial likelihood of success on the merits, (2) a lack of an adequate remedy at law, (3) the likelihood of irreparable harm absent the entry of an injunction, and (4) that injunctive relief will serve the public interest." *Id.* at 472 (citing *Sch. Bd. of Hernando Cty. v. Rhea*, 213 So. 3d 1032, 1040 (Fla. 1st DCA 2017)).

SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

A statute enacted by the legislature may not restrict a right granted under the constitution and, to the extent that a statute conflicts with express or implied mandates of the constitution, the statute must fall. *Notami Hosp. of Florida, Inc. v. Bowen*, 927 So. 2d 139, 142 (Fla. 1st DCA 2006), *aff'd sub nom. Florida Hosp. Waterman, Inc. v. Buster*, 984 So. 2d 478 (Fla. 2008). Similarly, the State is not permitted to alter the definition or meaning of a term laid out in the constitution. See *Dep't of Envtl. Prot. v. Millender*, 666 So. 2d 882 (Fla. 1996) (holding that the industry-accepted definition of a term trumps a statutory or rule-based definition when the effect of the statutory or rule-based definition would severely restrict or diminish the industry the constitutional amendment is designed to regulate).

The Department contends that appellee did not prove it had a substantial likelihood of success on the merits because section 381.986 does not conflict with the amendment, and the amendment does not prohibit the legislature from placing a cap on the number of MMTCs the Department may register. We disagree.

5

The amendment defines a Medical Marijuana Treatment Center as:

> an entity that acquires, cultivates, possesses, processes (including development of related products such as food, tinctures, aerosols, oils, or ointments), transfers, transports, sells, distributes, dispenses, *or* administers marijuana, products containing marijuana, related supplies, or educational materials to qualifying patients or their caregivers and is registered by the Department.

> Art. X, § 29(b)(5) Fla. Const. (emphasis added).

Meanwhile section 381.986(8)(e), Florida Statutes, states, in pertinent part, "A licensed medical marijuana treatment center shall cultivate, process, transport, *and* dispense marijuana for medical use." (emphasis added).

Section 381.986(8)(e) thus creates a vertically integrated business model which amends the constitutional definition of MMTC by requiring an entity to undertake several of the activities described in the amendment before the Department can license it. Under the statute, an entity must conform to a more restricted definition than is provided in the amendment; therefore, all MMTCs under the statute would qualify as MMTCs under the constitutional amendment, but the reverse is not true.

We thus find the statutory language directly conflicts with the constitutional amendment, and appellee has demonstrated a substantial likelihood of success in procuring a judgment declaring section 381.986(8)(e) unconstitutional. *See Notami Hosp.*, 927 So. 2d at 142.

As a direct result, we are constrained to find that appellee has also established a substantial likelihood of success in its challenge to the statutory cap of MMTCs under section 381.986(8)(a)1.-2., 4., Florida Statutes.

The State may not regulate an industry governed by a constitutional amendment in such a manner that would severely restrict or diminish the industry. *Millender*, 666 So. 2d at 887. Here, the amendment requires the Department to issue

6

"reasonable regulations necessary for the implementation and enforcement of this section. The purpose of the regulations is to ensure the availability and safe use of medical marijuana by qualifying patients." Art. X, § 29(d), Fla. Const. The statute provides for the registration of seventeen MMTCs in the entire state, with a requirement that within six months of an additional 100,000 patients registering with the Department another four MMTCs shall be licensed. § 381.986(8)(a)1.-2., 4., Fla. Stat.

Our ruling that the vertically integrated system conflicts with the constitutional amendment thus renders the statutory cap on the number of facilities in section 381.986(8)(a) unreasonable. It is therefore unnecessary for us to address the Department's authority to establish any caps.

IRREPARABLE HARM AND INADEQUATE REMEDY AT LAW

A trial court is required to provide specific reasons for entering a temporary injunction which must be supported by specific factual findings. Fla. R. Civ. P. 1.610(c); *Milin v. Nw. Florida Land, L.C.*, 870 So. 2d 135, 136 (Fla. 1st DCA 2003). We find that the trial court made sufficient findings supported by the record to establish that appellee will suffer irreparable harm without injunctive relief and that appellee has no adequate remedy at law.

The irreparable harm and inadequate remedy at law prongs are established by the fact that appellee is being unconstitutionally prevented from participating in the process for obtaining a license to operate as an MMTC. The amendment itself recognizes there is no adequate remedy at law where, as here, a state agency or actor refuses to abide by its express duties mandated under the constitution. The amendment specifically provides a cause of action to seek to "compel compliance with the Department's constitutional duties." Art. X, §29(d)(3), Fla. Const.

Even if there were a remedy at law, the law recognizes that a continuing constitutional violation, in and of itself, constitutes irreparable harm. The law also recognizes that implementation of an unconstitutional statute for which no adequate remedy at law exists leads to irreparable harm, which is the case here. *Gainesville Woman Care, LLC v. State*, 210 So. 3d 1243, 1264 (Fla.

7

2017). And where time is of the essence, as the Medical Marijuana amendment clearly provides, "[i]t truly can be said in this type of litigation that relief delayed is relief denied." *Capraro v. Lanier Bus. Products, Inc.*, 466 So. 2d 212, 213 (Fla. 1985) (concluding that irreparable injury is presumed in non-compete cases because "[i]mmediate injunctive relief is the essence of such suits and oftentimes the only effectual relief."). Moreover, because all of the defendants are either state governmental entities or state governmental actors, absent a waiver of sovereign immunity in the amendment, which is not present, no monetary damages could be recovered at law for the constitutional violations. *See, e.g., Tucker v. Resha*, 634 So. 2d 756, 759 (Fla. 1st DCA 1994). As the trial court found here, there is simply no remedy available to appellee in such circumstances. Nothing argued by the Department suggests otherwise.[1]

---

[1] The Department cites the decisions in *State, Department of Health v. Bayfront HMA Medical Center, LLC*, 236 So. 3d 466 (Fla. 1st DCA 2018); *State Agency for Health Care Admin. v. Continental Car Services, Inc.,* 650 So. 2d 173, 175 (Fla. 2d DCA 1995); *Stand Up for Animals, Inc. v. Monroe Cty.*, 69 So. 3d 1011, 1013 (Fla. 3d DCA 2011), for the proposition than an ability to seek monetary damages makes it nearly impossible for a party seeking a temporary injunction to establish that it has suffered irreparable harm. However, the circumstances underlying those decisions are readily distinguishable. None involve the specific violation of a constitutional amendment, and none involve a total inability to participate in the licensing process. *See Bayfront*, 236 So. 3d at 475-76 (Alleged irreparable harm was contingent on the approval of an application of a competitor to operate a trauma center); *Continental Car*, 650 So. 2d at 175 (Plaintiff alleged that a contract for transportation with another entity was executed without authority); *Stand Up for Animals*, 69 So. 3d at 1013 (court explained that the claims in this case comprised "no more than a claim for damages stemming from a breach of contract").

PUBLIC INTEREST

To sustain a temporary injunction a party must also establish that injunctive relief will serve the public interest. *Bayfront HMA Med. Ctr., LLC*, 236 So. 3d at 472.

The trial court's temporary injunction requires the Department to undertake three specific actions previously discussed. We determine that the trial court's factual findings support the conclusion that it is in the public interest to require the Department to registering or license MMTCs without applying the unconstitutional statutory provisions which appellee has challenged. However, the public interest does not support requiring the Department to immediately begin registering MMTCs or registering appellee at this stage of the proceedings. The amendment specifically directs the Department to establish "standards [for MMTCs] to ensure proper security, record keeping, testing, labeling, inspection, and safety." Art. X, § 29(d)(1)c., Fla. Const.

While it is in the public interest for the Department to promulgates rules that do not thwart the purpose of the amendment, it is also clear that the public interest would not be served by requiring the Department to register MMTCs pursuant to a preliminary injunction without applying other regulations to uphold the safety of the public.

We thus AFFIRM that portion of the injunction that precludes appellants from enforcing the unconstitutional provisions but allows the Department a reasonable period of time to exercise its duties under the constitutional amendment.

WOLF, J., concurs; MAKAR, J., concurs with opinion; WETHERELL, J., concurs in part and dissents in part with opinion.

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

9

MAKAR, J., concurring with opinion.

I fully concur but add one point. A good case can be made for why the public interest is served without an injunction, but a better case is made that the public interest is best served with injunctive relief as modified by the per curiam opinion. A high likelihood of success on the merits exists on the primary constitutional claim and the people of Florida voted for this amendment to be implemented rapidly (with deadlines now far exceeded). As such, the public interest is best served, not by allowing an unconstitutional market structure to remain in place, but to gravitate carefully and expeditiously away from the unlawful vertically-integrated oligopoly model to the non-integrated market structure the amendment envisions. While the supply-side structure of the medical marijuana market may be disjointed, at least in the short term, the intent of the amendment cannot be achieved anytime soon unless its language is put into operation. That the portion of the statute establishing a vertically-integrated industry structure is impermissible doesn't reduce or interfere with the Department of Health's ongoing regulatory authority to protect the public generally. In short, the public interest is best served by allowing implementation of the market structure the constitutional amendment requires subject to the Department's broad powers to protect the public.

WETHERELL, J., concurring in part and dissenting in part.

I agree with the majority opinion insofar as it quashes the portions of the preliminary injunction requiring the Department to immediately register Appellees—and potentially others—as medical marijuana treatment centers (MMTCs). However, I respectfully dissent from the remainder of the opinion because, in my view, Appellees failed to establish that the portion of the injunction affirmed by the majority is in the public interest.

The purpose of a preliminary injunction is to preserve the status quo pending the final disposition of the case. *See City of Jacksonville v. Naegele Outdoor Advertising Co.*, 634 So. 2d 750, 754 (Fla. 1st DCA 1994) (quoting *Ladner v. Plaza Del Prado*

10

*Condo. Ass'n,* 423 So. 2d 927, 929 (Fla. 3d DCA 1982)). The issuance of a preliminary injunction is "an extraordinary remedy which should be granted sparingly." *Id.* at 752 (quoting *Thompson v. Planning Comm'n of Jacksonville*, 464 So. 2d 1231, 1236 (Fla. 1st DCA 1985)). This is especially true where, as here, the act being enjoined is an act of a co-equal branch of government.

The Medical Marijuana Amendment[2] provides immunity from criminal sanctions and civil liability for the medical use of marijuana, but only when it is used "in compliance with [the Amendment]." Art. X, § 29(a), Fla. Const.; *see also Fla. Dep't of Health v. Redner*, 2019 WL 1466883, at *2 (Fla. 1st DCA Apr. 3, 2019). The Amendment authorizes the Department to adopt regulations to "ensure the availability and safe use of medical marijuana by qualifying patients," art. X, § 29(d), Fla. Const., and it also authorizes the Legislature to "enact[] laws consistent with [the Amendment]," *id.* at § 29(e). The Amendment specifically contemplates the adoption of regulations pertaining to the registration and operation of MMTCs. *See id.* at § 29(d)(1)c.

The medical marijuana industry is unique in that its product is *illegal* to possess, sell, and use, both under federal law and for non-medical purposes under Florida law. Because of this, the state has a compelling interest in ensuring that the industry is highly-regulated and operating within the narrow bounds established by the Medical Marijuana Amendment. However, that compelling interest cannot justify the enactment of statutes or regulations that contravene the plain language of the Amendment.

The primary issue in this case is whether the statute requiring MMTCs to be "vertically integrated" and perform all activities in the medical marijuana supply chain from cultivation to distribution is consistent with the definition of MMTC in the Medical Marijuana Amendment.[3] Appellees contend that the

---

[2] Amend. 2 (2016) (codified in art. X, § 29, Fla. Const.).

[3] Appellees also challenge the statute capping the number of MMTCs, *see* § 381.986(8)(a), Fla. Stat., but the merit of that claim was not addressed by the trial court. Moreover, at this stage of the litigation, the challenge to the caps is largely derivative of

11

statute is inconsistent with the Amendment because, unlike the statute, the constitutional definition expressly contemplates that an entity can be engaged in as little as one aspect of the medical marijuana supply chain and still be an MMTC. *Compare* § 381.986(8)(e), Fla. Stat. ("A licensed medical marijuana treatment center shall cultivate, process, transport, ***and*** dispense marijuana for medical use.") (emphasis added) *with* Art. X, § 29(a)(5), Fla. Const. ("[MMTC] means an entity that acquires, cultivates, possesses, processes ..., transfers, transports, sells, distributes, dispenses, ***or*** administers marijuana ....") (emphasis added). The Department responds that because the constitutional definition "in no way speaks to how the supply chain of medical marijuana must be structured," the Legislature had the constitutional authority to determine as a policy matter which supply-chain structure best ensures not only the availability of medical marijuana but also its safety and security.

Although there may be sound policy reasons for requiring MMTCs to be vertically integrated, I agree with Appellees (and the majority) that the statute likely contravenes the constitutional definition of MMTC because an entity that meets the constitutional definition by performing one or more—but not all—of the activities in the medical marijuana supply chain cannot be registered and operate as an MMTC under the statute. Accordingly, I agree with the majority that Appellees have shown a substantial likelihood of success on the merits of their claim that the statute contravenes the constitutional definition of MMTC and, thus, is unconstitutional.

A substantial likelihood of success on the merits is not, however, enough to obtain a preliminary injunction. The movant must also establish that it will likely suffer irreparable harm absent an injunction, that the movant does not have an adequate remedy at law, and that the injunction would serve the public interest. *See City of Jacksonville*, 634 So. 2d at 752 (quoting *Thompson*, 464 So. 2d at 1236). Here, unlike the majority, I am

Appellees' challenge to the statute requiring vertical integration because if the vertical integration requirement is invalid, then the caps are clearly indefensible.

12

not persuaded that any portion of the preliminary injunction entered by the trial court is in the public interest.

The portion of the injunction affirmed by the majority will effectively mandate an immediate change in the entire structure of the medical marijuana industry in Florida.[4]  Although such a change may ultimately be warranted, the trial court did not articulate—and Appellees did not show—how the public interest would be served by mandating this change through a preliminary injunction.  Indeed, the trial court initially (and correctly in my view) denied Appellees' motion for a preliminary injunction, finding that the injunction would not be in the public interest because an injunction would "substantially alter the status quo by halting the Department's existing rulemaking process and procedures for the issuance of MMTC licenses as well as the rulemaking currently underway to initiate the application process."  However, several months later, without hearing any additional evidence, the court reversed itself and entered the preliminary injunction.  The court did not explain how an injunction was now in the public interest, but rather simply stated that "[t]he public interest was clearly stated with the passage of the Constitution's Medical Marijuana Amendment by over 70% of Florida voters."

The trial court's focus on the popularity of the Medical Marijuana Amendment misses the mark because the Amendment contemplated a highly-regulated medical marijuana industry, not unlimited availability and unrestricted access to medical marijuana.  To that end, the statutory scheme put in place by the

---

[4]  The majority states that the injunction "allows the Department a reasonable period of time to exercise its duties under the constitutional amendment," *see* slip op. at 9, but that is not how I read the injunction.  Indeed, because the injunction states that the Department is "immediately" enjoined from registering or licensing MMTCs under the legislative scheme in section 381.986, Florida Statutes, it appears to me that the injunction will create a regulatory vacuum that will need to be immediately filled by an entirely new regulatory scheme in order to avoid an unregulated marketplace for medical marijuana.

Legislature—and implemented by the Department—appears to be serving the public interest because, despite the limited number of vertically-integrated MMTCs currently in operation, it is undisputed that medical marijuana is being produced and sold to qualifying patients. Additionally, Appellees failed to show how the preliminary injunction requiring the wholesale restructuring of the medical malpractice industry in Florida would be in the public interest, and on that issue, I agree with the Department that the confusion and uncertainty that the change would inject into the fledgling industry is not in the public interest. Indeed, based on the present record, it seems to me that the public interest would be best served by leaving the carefully-crafted statutory scheme enacted by the Legislature in place until the final disposition of this case and (if the statute is declared invalid) until the Department has an opportunity to comply with the declaration and adopt any necessary regulations to prevent the unchecked expansion of the medical marijuana industry pursuant to its constitutional authority "to ensure the availability and safe use of medical marijuana." *See* art. X, § 29(d), Fla. Stat.

Accordingly, for the reasons stated above, I would quash the preliminary injunction in its entirety and let the litigation play out below. This would, among other things, allow the existing MMTCs to join the fray because it is their golden geese that may be killed—or at least be devalued—if the oligopolistic statutory scheme established by the Legislature to implement the Medical Marijuana Amendment is ultimately invalidated.

———————————————————

Jason Gonzalez, Rachel Nordby, and Amber Stoner Nunnally of Shutts & Bowen LLP, Tallahassee, for Appellants.

Katherine E. Giddings, BCS of Akerman LLP, Tallahassee, Jonathan S. Robbins of Akerman LLP, Fort Lauderdale, Ari H. Gerstin of Akerman LLP, Miami, and Luke Lirot, Clearwater, for Appellees.